Opinion by Judge REINHARDT; Dissent by Judge CALLAHAN.
OPINION
REINHARDT, Circuit Judge:
The Court Interpreters Act protects the rights of federal litigants with limited English proficiency by requiring that courts' utilize the services of certified interpreters in proceedings instituted by the United States when the failure to do so would inhibit the party’s ability to participate fully in the proceedings. The Act also provides procedural safeguards to ensure that any waiver of this right is done knowingly, intelligently, and voluntarily. Prior to his trial, Defendant Adalberto Murguia-Rodriguez stipulated that law enforcement officers found marijuana in the truck he had been driving. At trial, with the assistance of an interpreter, he explained that he had borrowed the vehicle and did not know that there was marijuana inside. He was convicted of possession with the intent to distribute marijuana. He was then sentenced to 55 months in custody. He did not, however, have an interpreter at the sentencing proceeding, because the district court took his statement that the sentencing proceeding could proceed “in English” as a waiver of his right to have an interpreter during that proceeding.
On appeal, Murguia-Rodriguez challenges his conviction, arguing that the district court erred by failing to ensure that ’ his stipulation was knowing and voluntary. He also contends that the district court erred at sentencing by, among other things, dismissing his court-appointed interpreter contrary to the provisions of the Court Interpreters Act. In a memorandum disposition filed concurrently, we hold that the district court did not err in concluding that Murguia-Rodriguez entered into his trial stipulation knowingly and voluntarily. In this opinion, however, we hold that the district court dismissed Murguia-Rodri-■guez’s interpreter without adhering to the procedures required by the Court Interpreters Act. Accordingly, we affirm Murg-uia-Rodriguez’s conviction, vacate his sentence, and remand for a new sentencing hearing.
I. Background
Interpreters play an important role in protecting the rights of non-English speaking persons. Over 60 million people in the United States speak a language other than English at home. U.S. Census Bureau, Language Use in the United States: 2011 at 3 (Aug. 2013).[1] Of that number, 15.4% speak English “not well” and 7% (over 4 million) speak English “not at all.” Id. Effective language assistance is necessary to ensure that these individuals have meaningful access to government entities and programs. See Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41455, 41457 (June 18, 2002). Such assistance • is of particular importance in the courtroom where individuals must communicate in “precise language” under stressful conditions and key determinations affecting the individual’s personal liberty or financial well-being are often “made based on credibility.” Id. at 41471. This is especially so in criminal proceedings.
The Court Interpreter’s Act of 1978 was designed to accommodate individuals with limited English proficiency *569 and to ensure that they could fully “understand and participate in their own defense.” H.R. Rep. 95-1687 at 4 (1978). The Act requires that a certified interpreter be utilized in proceedings instituted by the United States when a party “speaks only or primarily a language other than the English language ... [thus] inhibiting] such party’s comprehension of the proceedings or communication with counsel or the presiding judicial officerf.]” 28 U.S.C. § 1827(d)(1).[2] The Act also restricts the party’s ability to waive his right to an interpreter. A party may waive that statutory right if, and “only if,” (1) the waiver is made “expressly on the record” by the party, (2) “after opportunity to consult with counsel,” (3) the presiding judge has explained to the party “the nature and effect of the waiver,” and (4) the waiver is approved by the presiding judge. 28 U.S.C. § 1827(f)(1).[3]
Murguia-Rodriguez . was charged with (1) the knowing and intentional possession with the intent to distribute marijuana and (2) the knowing possession of ammunition as a previously convicted felon. Murguia-Rodriguez, a legal permanent resident of this country for many years, could read English, but only understood spoken English “about 60 percent” of the time. The presiding magistrate judge determined at Murguia-Rodriguez’s initial appearance that he required a Spanish-language interpreter, and one was appointed for him.
Before trial, Murguia-Rodriguez stipulated that (1) law enforcement officers found 60 kilograms of marijuana in the truck that he had been driving, (2) law enforcement officers also found 45 rounds of .32 caliber ammunition in that vehicle, and (3) he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. At trial, with the assistance of his court-appointed interpreter, Murguia-Rodriguez testified that .he was unaware of the presence of the drugs and ammunition in the vehicle. The jury returned a mixed verdict. It convicted Murguia-Rodriguez of Count 1, and found that the offense involved 50 kilograms or more of marijuana. The jury acquitted Murguia-Rodriguez on Count 2, the possession of ammunition. Based on Murguia-Rodriguez’s offense level and criminal history, the probation officer calculated a guidelines range of 51 to 63 months.
Murguia-Rodriguez filed a sentencing memorandum in which he urged the court to consider the “effect of [his] imprisonment on third parties.” He noted that he was in an 11-year common-law relationship with a woman named Belinda Angulo, with whom he had a 12-year-old son. He further noted that he helped raise Angulo’s teenaged children, and that prior to his arrest, he “use[d] to take them and pick them up from school” and was “actively involved in their lives providing guidance and support.” He concluded his sentencing memorandum with a request for 33 months of incarceration.
At the outset of his sentencing hearing, the district judge said to Murguia-Rodri-guez: “[J]ust before the case was called the interpreter indicated that you had indicated you prefer to proceed in the English language this morning. Is that correct, sir?” Murguia-Rodrigez replied affirma *570 tively. The judge then asked: “Do you want the interpreter to remain in case you have any difficulties, or is it okay with you if she leaves the courtroom?” To which Murguia-Rodriguez replied, “She can stay.”
The judge then urged Murguia-Rodri-guez to let the interpreter cease performing her duties, stating: “But do you need her — she has other duties. Do you need her to stay, or do you feel comfortable proceeding in English?” Murguia-Rodri-guez answered “I am comfortable proceeding in English,” and the judge promptly dismissed the interpreter.
Ultimately, the judge accepted the probation officer’s guidelines calculation of 51 to 68 months. She sentenced Murguia-Rodriguez to 55 months of custody, followed by three years of supervised release. She entered judgment that same day, and Murguia-Rodriguez filed his notice of appeal three days later.
II. Analysis
Murguia-Rodriguez challenges his sentence on three grounds: (1) that the dismissal of his court interpreter violated the Court Interpreters Act, (2) that the district court erred procedurally by failing to address his non-frivolous argument in support of a below-Guidelines sentence, and (3) that the court should reconsider his sentence in light of recent retroactive amendments to the Sentencing Guidelines. He also challenges his conviction on the ground that the district court failed to ensure that his guilt-phase stipulation was entered into knowingly and voluntarily, an argument that we address in the memorandum disposition filed concurrently with this opinion.
When a court becomes aware of a criminal defendant’s potential difficulties in understanding or speaking the English language, it has a mandatory duty to make a determination on the record whether an interpreter is required, and if so, to appoint a certified individual. See, e.g., United States v. Si, 333 F.3d 1041, 1044 (9th Cir.2003). Any waiver of the right to a certified interpreter, whether before or after that determination, must comply with the express provisions of the Court Interpreters'Act. 28 U.S.C. § 1827(f)(1).
At the outset, we note that this case is unlike the other Court Interpreters Act cases that we have previously encountered. Those cases have typically come before us in one of two postures. First, we have considered cases in which the defendant’s need for an interpreter was overlooked by the district court and an interpreter was never appointed. Rather than decide whether an interpreter was required for the first time on appeal, we have regularly remanded these cases to the district court to make an initial determination whether the defendant should have been provided with an interpreter. See, e.g., Si, 333 F.3d at 1043 n. 4 & 1044; Mayans, 17 F.3d at 1179-81; United States v. Lim, 794 F.2d 469, 470 (9th Cir.1986).
Second, we have encountered cases in which the defendant challenges the district court’s explicit decision not to appoint an interpreter. See, e.g., Gonzalez v. United States, 33 F.3d 1047, 1050 (9th Cir.1994). In those cases, we review the district court’s determination for clear error and make a determination on the merits. Id.
This case does not fall into either of the above categories. Here, the magistrate judge presiding over Murguia-Rodri-guez’s initial appearance determined that an interpreter was required, and one was *571 appointed for him.[4] The district judge continued to use an interpreter throughout Murguia-Rodriguez’s trial, and indeed, an interpreter was present in the courtroom ready to provide services to him at the sentencing hearing. After a colloquy with the defendant, the district judge appeared to conclude that the defendant was willing to have the hearing held without an interpreter, although she made no finding that the original appointment of an interpreter was erroneous or should be vacated.[5] The question in this case, therefore, is not whether Murguia-Rodriguez required an interpreter, but whether he validly waived his right to an interpreter. We conclude that he did not.
The Court Interpreters Act is unambiguous on the point at issue. A party may waive his right to utilize an interpreter “only if’ the waiver has been made “expressly by [the party] on the record,” “after opportunity to consult with counsel,” and “after the presiding judicial officer has explained to such individual ... the nature and effect of the waiver.” 28 U.S.C. § 1827(f)(1). Then, and only then, may the presiding judicial officer approve a waiver.
Murguia-Rodriguez did not validly waive his right to an interpreter. To begin with, Murguia-Rodriguez never asked to dismiss his interpreter. Instead, he *572 asked if he could proceed in English, and, when questioned by the district judge, he indicated that in case he had any difficulties, he wanted the interpreter to remain present. At no point, however, did Murg-uia-Rodriguez “expressly” state his desire to waive his right to the interpreter. He merely stated that he wanted to “proceed in English” — in other words, that he wished to make his allocution in English— perhaps in the hope that doing so would make the sentencing judge more sympathetic to him and to his argument. Murg-uia-Rodriguez’s statement did not convey either expressly or implicitly a desire to no longer have an interpreter to help him comprehend the proceedings generally or to communicate with his lawyer specifically. That the defendant chose to make his sentencing statement in English does not signify in any way that he no longer needed or wanted help in comprehending statements made by the judge, including the court’s pronouncement of his sentence, or by the prosecutor.
Moreover, rather than explain to Murg-uia-Rodriguez the nature and effect of his waiver, the judge indicated to him that she wished to dismiss the interpreter: “She has other duties. Do you need her to stay or are you comfortable proceeding in English?” The requirement that judges explain the nature and effect of the waiver is not a hollow technical command. By explaining to defendants the nature and effect of any prospective waiver, a judge not only ensures that the waiver is knowing and voluntary, but also that the judge and the defendant have a shared understanding as to its scope. A waiver, after all, can come in many forms. A defendant may wish, for example, to waive all translation, or he may merely want to waive the right to a certified translator in favor of having a family member translate. By failing to comply with the procedural safeguards of 28 U.S.C. § 1827(f)(1), a judge unnecessarily risks misunderstanding the defendant’s intentions, and therefore risks depriving him of an interpreter without his consent, as the judge did in this case.[6]
It goes without saying that in Murguia-Rodriguez’s case not only did he not make a waiver “expressly on the record,” but the district judge did not explain to him “the nature and effect of the waiver.” Instead, she presented him with a false choice: whether he was “comfortable proceeding [with his allocution] in English” or having the interpreter remain and continue to perform her duties. Murguia-Rodriguez quite properly initially indicated that he preferred both, but the district judge erroneously refused to accept this answer and continued to press him to do one or the other. In the end, there was, of course, no waiver at all.
In sum, we conclude that because the judge clearly erred in failing to comply with the procedural requirements of 28 U.S.C. § 1827(f)(1), Murguia-Rodriguez was deprived of his right to an interpreter in violation of the Court Interpreters Act.
Although the government failed to raise the issue of harmlessness in its brief, and thus waived that issue, the dissent asserts that we should hold that the deprivation of Murguia-Ródriguez’s rights was harmless. As a general and consistent rule, “when the government fails to argue harmlessness, we deem the issue waived and do not consider the harmlessness of any errors we find.” United States v. Kloehn, 620 F.3d 1122, 1130 (9th Cir. *573 2010) (quoting United States v. Gonzalez-Flores, 418 F.3d 1093, 1100 (9th Cir.2005)); United States v. Varela-Rivera, 279 F.3d 1174, 1180 (9th Cir.2002); United States v. Vallejo, 237 F.3d 1008, 1026 (9th Cir.2001). This is true even when the government “mentions” that harmless error applies in its brief but fails to advance a developed theory about how the errors were harmless, Gonzalez-Flores, 418 F.3d at 1100 n. 4, as well as when the government makes no argument whatsoever as to harmlessness in its brief, see United States v. Dreyer, 804 F.3d 1266, 1277 (9th Cir.2015) (en banc) (“[A]n appellee waives any argument it fails to raise in its answering brief.”).
We have discretion to consider the issue of harmlessness nostra sponte in “extraordinary cases.” Gonzalez-Flores, 418 F.3d at 1100-01. This case is not, however, an extraordinary one. The error committed by the district judge, although motivated by a concern for judicial efficiency, is precisely the type of error the statute was designed to prevent. The Court Interpreters Act seeks to protect the basic rights of litigants who are summoned into court by the United States and cannot fully comprehend the proceedings. Moreover, sentencing is a critical part of the judicial process, especially in an era when the vast majority of convictions result from pleas rather than trials. Notwithstanding the sentencing guidelines, an individual’s explanation to a judge as to why his sentence should be less than the judge may be considering plays an important role in the sentencing process. Conversely, the ability of the defendant to fully comprehend why the judge has chosen the sentence he has is essential to the proper functioning of the criminal justice system. The court’s explanation of its reasons is intended to encourage the defendant and perhaps others to refrain from further unlawful conduct and to become law-abiding individuals following the period of incarceration. Further, resentencing will not require more than the expenditure of minimal judicial resources and provides a far better resolution of the issue than expanding the doctrine of harmlessness, which will only encourage the government’s laxness and failure to follow this court’s clear, applicable precedent. Finally, it would be exceedingly difficult in the ordinary case for a court to determine on appeal what effect the lack of an interpreter had on a defendant’s ability to understand the entire course of the sentencing proceedings. Cf. Gonzalez-Flores, 418 F.3d at 1101. Accordingly, we will not exercise our discretion to consider whether the district court’s error was harmless.
The dissent also suggests that the plain error doctrine applies to the issue before us because Murguia-Rodriguez failed to object to the district court’s dismissal of the interpreter. Once again, the dissent relies on an issue not raised by the government. The United States has never once suggested that Murguia-Rodriguez did not preserve this issue or that the plain error doctrine is applicable to the question of the failure of the district court to follow the statutory procedures. Indeed, the government consistently stated that dear error applies to that issue, even though it asserted that plain error applies to two of the three other errors that Mug-uia-Rodriguez raised on this appeal.[7] As *574 we stated in United States v. Kortgaard, and as a number of other circuit courts have agreed, the government may waive the argument that an error was not objected to and was therefore forfeited. Without a forfeited error, plain error does not apply. United States v. Kortgaard, 425 F.3d 602, 610 (9th Cir.2005) (treating a potentially forfeited error as preserved because the government “elected to address the merits” without addressing whether the defendant had raised the issue below and declining to apply plain error because the government therefore “ ‘waived’ any waiver argument it may have had”).[8] The First Circuit follows the same rule. It has held that when the government “fails to request plain error review, we, and many of our sister circuits, review the claim under the standard of review that is applied when the issue is properly preserved below.” United States v. Encarnación-Ruiz, 787 F.3d 581, 586 (1st Cir.2015) (listing cases); see also United States v. Paulino-Guzman, 807 F.3d 447, 450 (1st Cir.2015) (reiterating the rule). As the Sixth Circuit put it, “we will not apply the plain-error standard unless requested to do so by one of the parties.” United States v. Poulsen, 655 F.3d 492, 502 n. 1 (6th Cir.2011). Finally, in a case that closely resembles ours, the Seventh Circuit stated, “when a party fails to raise an issue in the trial court, we generally review for plain error. However, the government asserts that in this case we review the district court’s determinations ... for clear error. It therefore has waived its right to rely on plain error review.” United States v. Salem, 597 F.3d 877, 884 (7th Cir.2010).[9]
Our rule, of course, is discretionary, and there may well be good reason to apply *575 plain error in a particular case, even if the government has failed to assert that the error has not been preserved. In this case, however, there is no such reason. The government expressly chose to argue that plain error applied to two of the three other issues in Murguia-Rodriguez’s appeal, but chose not to do so with respect to the district court’s failure to follow the statutory commands. Moreover, many of the reasons why we decline to consider harmlessness apply with equal force to the plain error question raised sua sponte by the dissent. We particularly see no reason to exercise our discretion in this sentencing case in which a remand for resentenc-ing requires minimal expenditure of judicial and prosecutorial time and resources. Thus, without applying the plain error standard, but applying either clear error or de novo, we vacate Murguia-Rodri-guez’s sentence and remand for a new sentencing hearing. Because this remedy obviates the need to address the other asserted sentencing errors, we do not consider them here.
III. Conclusion
For the reasons discussed in the concurrently filed memorandum disposition, we affirm Murguia-Rodriguez’s conviction. We hold, however, that Murguia-Rodri-guez was deprived of his right to an interpreter at sentencing in violation of the Court Interpreters Act. Accordingly, we vacate Murguia-Rodriguez’s sentence and remand for a new sentencing hearing at which Murguia-Rodriguez may utilize the services of a certified interpreter unless appropriately waived through the required procedures of the Court Interpreters Act or the presiding judge makes a proper determination on the record that an interpreter is no longer required.
AFFIRMED in part, VACATED in part, and REMANDED for proceedings consistent with this opinion.

. Available at: https://www.census.gov/prod/ 2013pubs/acs-22 .pdf.

. The law also requires use of an interpreter' for hearing-impaired individuals.

. As to condition (3), the explanation of the nature and effect of the waiver must be made through "the services of the most available certified interpreter, or when no certified interpreter is reasonably available ... the services of an otherwise competent interpreter.” 28 U.S.C. § 1827(f)(1). We need not consider the additional language because the judge made no explanation at all in this case.

. Although very little was stated on the record about why Murguia-Rodriguez required an interpreter, this appears to be consistent with congressional intent. As the House Report on the Court Interpreters Act states, "[i]t is anticipated that the need for formal proceedings to make an initial determination of whether the appointment of an interpreter is required will be minimal.” H.R. Rep. 95-1687, at 6 (1978). The procedures here may have been minimal, but the magistrate judge clearly determined that an interpreter was required. The dissent suggests that an interpreter may have been appointed in an abundance of caution, but that is irrelevant. There is sufficient evidence to support the finding that an interpreter was "required” because Murguia-Rod-riguez could understand English only about "60 percent” of the time, which the judge could surely find "inhibited]” his "comprehension of the proceedings or communication with counsel or the presiding judicial officer.” 28 U.S.C. § 1827(d). The dissent also notes that Murguia-Rodriguez asked for a remand to determine whether he needed an interpreter at sentencing. Remand is the remedy we have granted in previous cases — cases in which the court failed to determine whether an interpreter was required and the case proceeded to a final decision without one. This case, however, is not about whether an interpreter should have been appointed, but about what procedures the court must follow before . finding a waiver. It presents a question of law which requires no factual development, and thus no remand is necessary.

. The dissent tries to scrape together pieces of Murguia-Rodriguez’s testimony to suggest that a hypothetical judge might have determined that an interpreter was not needed, but the only finding of fact actually made in the proceedings was that an interpreter was "required.” We typically review findings of fact for clear error, and do not substitute our own findings for the district court's. If, as the dissent suggests, an interpreter was no longer necessary at the sentencing hearing, the district court would have been required to find as much on the record. No such findings were made, and it appears that the district judge intended to proceed with an interpreter at the sentencing hearing until she erroneously concluded that Murguia-Rodriguez was willing to waive his right to one. Furthermore, contrary to the dissent’s suggestion, Murguia-Rodriguez has not "conceded” that there was no fact-finding in this case regarding whether he required an interpreter. Rather, he suggested that the district court "might be entitled to deference” if its decision to dismiss the interpreter had been based on a finding that he could "understand the proceedings and express himself clearly without an interpreter. But the court made no such finding here[.]” Obviously, Murguia-Rodri-guez’s contention is not that there was no fact-finding as to whether he required an interpreter, but that there was no finding of fact that an interpreter was no longer required.

. The difference between the dissent’s interpretation of the words “she can stay” (that she could stay if she wants), see Dissent Op. at 576 n.2, and our own (that he actually wanted her to stay) highlights this risk of potential misunderstanding — especially when dealing with individuals who have limited English proficiency.

. The government is correct to suggest that clear error is the appropriate standard to apply when reviewing a district court’s determination whether an interpreter is required. See Mayans, 17 F.3d at 1179. Here, however, where the only question is whether the district court complied with the waiver provisions of 28 U.S.C. § 1827(f) — a question of law — there is a strong argument that the standard should be reviewed de novo. We need not decide this question, however, because the result would be the same under either *574 standard. We can state unequivocally that we have a definite and firm conviction that the district court clearly erred by failing to follow the statutory procedures contained in 28 U.S.C. § 1827(f).

. This is not inconsistent with the dissent's point that the burden of showing prejudice under the plain error standard is on the defendant, not the government. See United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The plain error doctrine applies only when an error has been forfeited, or in other words, not appropriately preserved by the defendant. See Fed. R.Crim.P. 51 & 52(b). If the error is not forfeited, or if the government has waived any contention that it is forfeited, the government has waived the waiver,- and plain error does not apply.

. The First, Sixth, and Seventh Circuits have explicitly held that a court may decline to apply plain error review when the government has failed to assert that the challenged error was forfeited. The Fifth and D.C. Circuits have indicated their approval of this holding. See United States v. Jeffries, 587 F.3d 690, 691 n. 1 (5th Cir.2009) (declining to apply plain error and noting that "[t]he Government does not seek plain error review”); United States v. Cyr, 29 Fed.Appx. 1, 4 n. 3 (D.C.Cir.2001) (unpublished) (“[BJecause the government does not argue for 'plain error’ review, we consider only whether the error was 'clear.' ”). A number of these circuits, moreover, recognize our circuit as applying this rule. See, e.g., Encarnación-Ruiz, 787 F.3d at 586. -Even the concurrence in United States v. Williams, which criticizes the majority’s decision not to apply plain error, and questions the decisions by other circuits adopting that position, describes Kortgaard as: "holding that plain error is waivable because litigants can waive waiver arguments.” 641 F.3d 758, 772 (6th Cir.2011) (Thapar, District Judge, concurring). Our dissenting colleague cites no circuit cases to the contrary. Finally, while the dissent is correct to note that "[a] party’s concession on the standard of review does not bind the court,” Dissent Op. 579 (quoting United States v. Bain, 586 F.3d 634, 639 n. 4 (8th Cir.2009) (emphasis in original)), that is not inconsistent with our holding. "The 'waiver of waiver’ doctrine” that we apply here is "like waiver generally — a discretionary doctrine.” See United States v. Macias, 789 F.3d 1011, 1017 n. 3 (9th Cir.2015). Thus, the court may exercise its discretion to apply plain error, and is not bound by any concession made by the government.