**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

KENNETH RANDALE DOOR,
*Defendant-Appellant.*

No. 19-30213

D.C. No.
3:12-cr-05126-RBL-1

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted September 4, 2020
Seattle, Washington

Filed April 28, 2021

Before: Jay S. Bybee and Daniel P. Collins, Circuit
Judges, and James Alan Soto,* District Judge.

Opinion by Judge Bybee

---

* The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a criminal judgment in a case in which Kenneth Randale Door was convicted for being a felon in possession of a firearm (18 U.S.C. §§ 922(g)(1)) and a felon convicted of a crime of violence in possession of body armor (18 U.S.C. § 931(a)).

The panel held that in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the district court committed plain error by failing to require the government to prove Door's knowledge of his prohibited status and omitting the knowledge element from the indictment and jury instructions. The government admitted that Door's § 922(g)(1) conviction is governed by *Rehaif*, but contested the application of *Rehaif* with respect to his § 931(a) conviction. The government asserted that *Rehaif* only requires the government to prove that a defendant knew of his status as a felon, not that he was a felon convicted of a crime of violence. The panel rejected this contention, concluding that *Rehaif* requires the government to prove that a defendant charged with violating § 931(a) knew he had a felony conviction and that the felony of which he was convicted had "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). The panel held that Door cannot show that these errors affected the fairness, integrity, or public reputation of the judicial proceedings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not clearly err in applying an obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1 based on Door's pre-trial threats. The panel rejected Door's claims that the sentence was procedurally and substantively unreasonable.

## COUNSEL

Carlton F. Gunn; Law Office of Carlton F. Gunn, Pasadena, California, for Defendant-Appellant.

Michael S. Morgan (argued), Assistant United States Attorney; Brian T. Moran, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee

## OPINION

BYBEE, Circuit Judge:

Defendant Kenneth Randale Door was convicted in 2014 for being a felon in possession of a firearm and a felon convicted of a crime of violence in possession of body armor. Relying on the Supreme Court's intervening opinion in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Door argues that his convictions cannot stand because the government failed to prove, the indictment failed to allege, and the jury instructions failed to require that he knew of his prohibited statuses. Door further asserts that the district court erred in applying the obstruction of justice enhancement during sentencing. Finally, Door challenges his sentence as both procedurally and substantively unreasonable. We have

jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We affirm.

## I.  FACTS AND PROCEEDINGS

A.  *Search, Indictment, and Trial*

Kenneth Door has an extensive criminal history, including convictions for burglary, theft, assault, and harassment.  In 2011, an informant told an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives that Door possessed guns and was selling methamphetamine out of his home.  Because Door was on probation in Washington, the agent contacted a Washington State Community Corrections officer, who conducted a probation search of Door's house in Tacoma. The search revealed two pistols, multiple rounds of ammunition for the pistols, two military grade ballistic vests, an explosive device known as a "seal bomb," two digital scales, drug packaging materials, and two drug pipes containing methamphetamine residue.  Door was arrested shortly thereafter.

While in the county jail, and before he was indicted on federal charges, Door requested a meeting with his federal case agent.  During that visit, Door admitted that the guns, vests, and seal bomb belonged to him.  After the agent testified at Door's suppression hearing, Door told his attorney that he intended to have the agent killed.  The attorney asked to be removed from the case and reported the threats to the government.  After his trial, Door made additional threats in front of other inmates that he would have the case agent and his former attorney killed.

In March 2012, Door was indicted in United States District Court for the Western District of Washington and charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); a felon convicted of a crime of violence in possession of body armor in violation of 18 U.S.C. §§ 931(a) and 924(a)(7); and, a felon in possession of explosives in violation of 18 U.S.C. §§ 842(i)(1) and 844(a)(1). Door entered the following stipulation regarding his felon and violent felon status:

> Prior to November 9, 2011, Kenneth Door, the defendant herein, had been convicted of a felony crime punishable by a term of imprisonment exceeding one year. That is a crime of violence, as defined by law, and therefore was a convicted felon and a person convicted of a felony that is a crime of violence at the time of the events that are the subject of this prosecution.

Door proceeded to trial and was convicted on all counts.

B.  *Sentencing and First Appeal*

The Probation Office (Probation) recommended a base offense level of 24 due to "at least two felony convictions of either a crime of violence or a controlled substance offense." Probation also recommended a number of Sentencing Guidelines (Guidelines) enhancements, including for possession of a destructive device (seal bomb), possession of a stolen firearm, possession of firearms in connection with another felony offense (drug trafficking), and obstruction of justice (based on Door's threats to kill the case agent and others). Probation also concluded that Door was an armed

career criminal under the Armed Career Criminal Act
(ACCA), 18 U.S.C. § 924(e), based on his prior convictions
for attempting to elude a police vehicle, multiple second-
degree burglary convictions, and second-degree assault with
a deadly weapon.[1]  The enhancements, combined with Door's
criminal history category of VI, produced a Guidelines range
of 262–327 months.  Probation recommended 300 months.
Over Door's objections, the district court found that the
enhancements and the ACCA applied and sentenced Door to
300 months.

On direct appeal, we found that the destructive device
enhancement did not apply to the seal bomb, and that the
district court made insufficient findings on the obstruction of
justice and the "in connection with another felony"
enhancements.  *United States v. Door*, 647 F. App'x 755, 757
(9th Cir. 2016), *as amended by* 668 F. App'x 784 (9th Cir.
2016).  We initially deferred ruling on the ACCA issue but
ultimately held that Door's burglary convictions were not
violent felonies under the ACCA and vacated Door's
sentence accordingly.  *United States v. Door*, 656 F. App'x
376, 376–77 (9th Cir. 2016).

C.  *Re-sentencing and Second Appeal*

On remand, Probation again recommended a base offense
level of 24, reasoning that Door's prior Washington state
convictions for second-degree assault with a deadly weapon
and felony harassment constituted crimes of violence.

---

[1] The ACCA categorization did not increase the Guidelines offense
level, but it did increase the statutory maximum sentence to life and
trigger a statutory mandatory minimum sentence of 15 years.  18 U.S.C.
§ 924(e).

Probation further recommended enhancements for possession of a stolen firearm, possession of a firearm in connection with another felony, and obstruction of justice. The enhancements, coupled with Door's criminal history category of VI, produced a Guidelines range of 210–262 months. Probation recommended a 276-month sentence due to Door's extensive criminal history.

Over Door's objections, the district court determined at sentencing that the second-degree assault and felony harassment convictions qualified as crimes of violence under the required categorical approach. The district court also ruled that the various enhancements were supported by sufficient evidence. During sentencing, the district court noted its "long-standing criticism" of the categorical approach but acknowledged that it was "duty-bound" to re-sentence Door in accordance with the law. The district court imposed the recommended sentence of 276 months, followed by 5 years of supervised release. On Door's second appeal, we ruled that a felony harassment conviction is a crime of violence for Guidelines purposes but that Door's conviction for second-degree assault is not and remanded accordingly for a second re-sentencing. *United States v. Door*, 917 F.3d 1146, 1152–55 (9th Cir. 2019).[2]

---

[2] In a concurrently filed memorandum disposition, we also determined that Door's felony harassment conviction constitutes a crime of violence supporting his conviction for unlawful possession of body armor, and that the enhancement for possessing a firearm in connection with another felony was warranted. *United States v. Door*, 756 F. App'x 757, 758–59 (9th Cir. 2019). We declined to order reassignment on remand. *Id.*

D. *Second Re-sentencing and Current Appeal*

At the second re-sentencing, Probation recommended a base offense level of 20 based on Door's felony harassment conviction. Probation also recommended enhancements for possession of a stolen firearm, possession of a firearm in connection with another felony, and obstruction of justice. The enhancements, coupled with Door's criminal history category of VI, produced a Guidelines range of 140 to 175 months. Probation again recommended 276 months. The government did likewise. Door objected to all the enhancements.

At the start of the re-sentencing hearing, the district court again expressed frustration with the categorical approach jurisprudence. Of Door, the district court stressed, "I consider Mr. Door to perhaps be the most dangerous defendant I have had in 18 or 19 years . . . . He did everything and then more to justify his sentence, with the threats." Before imposing the sentence, the district court made clear that it had heard argument and reviewed all of the material submitted from both sides. In response to defense counsel's argument that Door's recent good behavior in prison merited mitigation, the district court agreed that re-sentencing afforded an opportunity for "a mid-course correction" but noted that Door was being sentenced for his past behavior, "which is very serious." The district court further observed that "[t]he guidelines are a guide, unless they are not."

In imposing the sentence, the district court adopted the factual assertions in the PSR and applied the sentencing enhancements. Relevant to this appeal, the district court found—over Door's objection—that the obstruction of justice enhancement was warranted because it involved "the worst

kind of abuse of our system, including threats to officers." The district court then adopted the recommendation from Probation and the government for 276 months, followed by three years of supervised release.

In the present appeal, Door raises four issues: (1) whether his felon in possession of firearm and violent felon in possession of body armor convictions must be vacated because the government failed to prove, the indictment failed to allege, and the jury instructions failed to require that he knew of his prohibited statuses when he possessed the firearms and body armor, as required by *Rehaif v. United States*, 139 S. Ct. 2191 (2019); (2) whether the district erred in applying the Guideline enhancement for obstruction of justice; (3) whether his sentence was procedurally and substantively unreasonable; and (4) whether we should reassign the case in the event of remand. We will consider each issue in turn. Because we conclude that there was no error in the first three issues raised, we need not reach the question of reassignment, which in any event has been mooted by the retirement of the district judge who imposed the sentence.

## II. KNOWING POSSESSION AND *REHAIF*

We first consider Door's claim that the Supreme Court's intervening decision in *Rehaif* requires us to vacate his convictions for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)[3] and a felon convicted of

---

[3] 18 U.S.C. § 922(g) makes it "unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or

a crime of violence in possession of body armor in violation of 18 U.S.C. § 931(a)(1).**[4]**  Door asserts that the evidence presented at trial was insufficient to sustain his convictions because the government failed to prove he knew of his prohibited statuses and, similarly, the indictment and jury instructions omitted the requisite knowledge element. We will begin with a discussion of *Rehaif* and then address Door's challenge to the sufficiency of the evidence.

A.  Rehaif *and Knowing Violations*

Hamid Rehaif was convicted of violating 18 U.S.C. § 922(g)(5)(A) for being an alien unlawfully in the United States in possession of firearms. *See Rehaif*, 139 S. Ct. at 2194.  A separate provision provides that any person who "knowingly violates" § 922(g) shall be fined or imprisoned. 18 U.S.C. § 924(a)(2).  Rehaif had come to the United States on a student visa but had been dismissed from school, making his presence unlawful. *Rehaif*, 139 S. Ct. at 2194.  He was arrested after he visited a firing range to shoot two firearms, and was charged with violating § 922(g). *Id.*  Rehaif argued that although he had possessed firearms, the district court

ammunition . . . ."  Section 924(a)(2) provides: "Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

**[4]** 18 U.S.C. § 931(a) makes it "unlawful for a person to purchase, own, or possess body armor, if that person has been convicted of a felony that is—(1) a crime of violence (as defined in section 16)."  Section 16 provides, in relevant part: "The term 'crime of violence' means—(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  Section 924(a)(7) states: "Whoever knowingly violates section 931 shall be fined under this title, imprisoned not more than 3 years, or both."

erred in instructing the jury that the government did not have to prove Rehaif knew he was in the country unlawfully. *Id*. at 2195. The Court agreed with Rehaif that the term "knowingly" in § 924 applied to Rehaif's conduct (possessing the firearm) and his status (being an alien unlawfully in the United States). *Id*. at 2200. Because it was not clear whether the district court had correctly instructed the jury that it must find that Rehaif knew he was out of status when he left school, the Court reversed and remanded for further proceedings. *Id.*

Although neither Door nor the government anticipated the Court's decision in *Rehaif*, Door gets the benefit of *Rehaif* on his direct appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). The government admits that Door's conviction under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm is governed by *Rehaif*, *see United States v. Benamor*, 937 F.3d 1182, 1188 (9th Cir. 2019), but it contests the application of *Rehaif* with respect to Door's conviction for being a violent felon in possession of body armor pursuant to 18 U.S.C. § 931(a). The government asserts that *Rehaif* only requires the government to prove that a defendant knew of his status as a felon, not that he knew he was a felon convicted of a crime of violence.

We think such a construction is incompatible with *Rehaif*'s analysis. In *Rehaif*, the Supreme Court held that "[t]he term 'knowingly' in § 924(a)(2) modifies the verb 'violates' and its direct object, which in this case is § 922(g)." 139 S. Ct. at 2195. The Court reasoned that "[a]s a matter of

ordinary English grammar, we normally read the statutory term knowingly as applying to all the subsequently listed elements of the crime." *Id*. at 2196 (citation and internal quotation marks omitted). The direct object, § 922(g), contained a "status element," namely that Rehaif was "an alien . . . illegally or unlawfully in the United States." *Id.* at 2195–96 (quoting 18 U.S.C. § 922(g)(5)(A)). The Court found that "[a]pplying the word 'knowingly' to the defendant's status in § 922(g) helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts." *Id*. at 2197. Because "the possession of a gun can be entirely innocent" it is "the defendant's *status*, and not his conduct alone, that makes the difference." *Id.* Thus, the Court expressed concern that, under the government's construction, these statutes might be applied to an alien who was brought to the United States as a child and was unaware of his status, or a person convicted of a prior crime who was given probation and might not have known the crime was punishable by imprisonment for a term exceeding a year. *Id.* at 2197–98.

This same logic extends to the relationship between § 924(a)(7) and § 931(a)(1), which govern Door's conviction for possessing body armor. The term "knowingly" in § 924(a)(7) modifies the verb "violates" and its direct object, "section 931." Following *Rehaif*, "knowingly" thus applies to all the elements listed in § 931(a)(1): "a person [who] purchase[s], own[s], or possess[es] body armor, if that person has been convicted of a felony that is—a crime of violence (as defined in section 16)." The government offers no explanation as to why the word "knowingly" in § 924(a)(7) applies to the noun listed in § 931(a)(1) ("a felony") but does not apply to the phrase that qualifies it ("a crime of violence (as defined in § 16)"). Instead, the government warns that

requiring proof of a defendant's knowledge that he was convicted of a crime that meets the legal definition of a crime of violence places an impossible and unnecessary burden on the government.

We think the government has overread *Rehaif*. We do not understand *Rehaif* to mean that the government must prove that the defendant knew that he had been convicted of a crime that a court has specifically declared to be a "crime of violence" under 18 U.S.C. § 16. That would be a nearly impossible burden for the government, and it would severely limit the scope of § 931(a)(1). Section 931(a)(1) does not say "a crime of violence, declared to be such by a court"; rather, it states "a crime of violence *as defined in section 16*." 18 U.S.C. § 931(a)(1) (emphasis added; parenthesis omitted). We understand *Rehaif* to mean that the government must prove that a defendant who possessed body armor knew that (1) he was convicted of a felony and, (2) the felony of which he was convicted had as an element "the use, attempted use, or threatened use of physical force." 18 U.S.C. § 16(a). The term "physical force" should be given its ordinary meaning, which "in the context of a statutory definition of '*violent* felony,' . . . means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 138, 140 (2010);[5] *see also Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (observing that "[t]he ordinary meaning of this term [crime of violence],

---

[5] *Johnson* addressed the phrase "physical force" as used in § 924(e)(2)(B)(i), *see* 559 U.S. at 138, but the same phrase appears in § 16. Generally, "when Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005).

combined with § 16's emphasis on the use of physical force . . . suggests a category of violent, active crimes"). If anything, the case law in this area suggests that the lay understanding of what constitutes a crime of violence may be overinclusive, such that a defendant may find himself pleasantly surprised to learn that a court has deemed his past crime *not* to be a crime of violence.[6]

We thus conclude that *Rehaif* requires the government to prove that a defendant charged with violating § 931(a) knew he had a felony conviction and that the felony of which he was convicted had "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). We now turn to the merits of Door's asserted *Rehaif* errors, beginning with his challenge to the sufficiency of the evidence.

## B. *Sufficiency of the Evidence*

At the close of the government's case, Door made a general oral motion for a "directed verdict on all three counts" under Federal Rule of Criminal Procedure 29.[7] Door offered no argument, and the district court denied his motion. Door summarily renewed his Rule 29 motion on all charges after closing argument, which the district court promptly denied.

---

[6] Our recent decision in *United States v. Begay*, 934 F.3d 1033 (9th Cir. 2019), offers an example of perhaps a less intuitive holding in which we determined that second-degree murder does not constitute a crime of violence. *See id.* at 1042 (N.R. Smith, J., dissenting) ("How can this be?").

[7] Not pertinent to this appeal, Door also challenged the sufficiency of the evidence supporting his ACCA eligibility in his Rule 29 motion.

Both parties initially assumed that Door's summary Rule 29 motion entitled him to de novo review of his sufficiency of the evidence claim under *Rehaif*, and both sides briefed the issue as such. In its brief, the government explained that it believed de novo review was required based on our precedent holding that a general Rule 29 motion preserves all objections to the sufficiency of the evidence. *See, e.g., United States v. Navarro Viayra*, 365 F.3d 790, 793 (9th Cir. 2004) ("Rule 29 motions for acquittal do not need to state the grounds upon which they are based."). Where preserved, "[w]e review de novo the denial of a motion for acquittal." *United States v. Niebla-Torres*, 847 F.3d 1049, 1054 (9th Cir. 2017).

Following oral argument, however, we held in *United States v. Johnson*, 979 F.3d 632 (9th Cir. 2020), *amending* 963 F.3d 847 (9th Cir. 2020), that plain error, not sufficiency of the evidence, is the proper standard to review an unpreserved *Rehaif* error. In that case, Lamar Johnson was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 634. After we affirmed his conviction, the Supreme Court decided *Rehaif*. *Id.* Johnson subsequently filed a petition for certiorari, "in which he argued for the first time that the government failed to prove at trial that he knew of his status as a convicted felon." *Id.* at 635. The Supreme Court granted his petition and, on remand, we analyzed Johnson's *Rehaif* argument as a challenge to the sufficiency of the evidence. *Id.* Because Johnson had not raised his sufficiency challenge in the district court, however, we reviewed his claim for plain error and found no manifest injustice. *Id.* (citing *Johnson*, 963 F.3d at 850).

Johnson then petitioned for rehearing and rehearing en banc, arguing that because he had pled not guilty and

proceeded to a bench trial, the panel should have reviewed his sufficiency of the evidence challenge de novo. *Id.* (discussing *United States v. Atkinson*, 990 F.2d 501, 503 (9th Cir. 1993) (en banc) (holding that, in a bench trial, a defendant who had pled not guilty need not move for acquittal to preserve an objection to the sufficiency of the evidence)). Denying rehearing and rehearing en banc, we filed an amended opinion. *Johnson*, 979 F.3d at 635–36. We concluded that *Atkinson* was inapposite because "although Johnson [] framed his argument as a challenge to the sufficiency of the evidence, that [was] not in fact the correct way to conceive of it." *Id*. at 636. As we explained, "a sufficiency challenge must be assessed against the elements that the government was required to prove at the time of trial." *Id.* (citing *United States v. Kim*, 65 F.3d 123, 126–27 (9th Cir. 1995); *United States v. Weems*, 49 F.3d 528, 530–31 (9th Cir. 1995)). Johnson did not dispute that the government had introduced sufficient evidence at trial under our pre-*Rehaif* precedent; thus his *Rehaif* challenge was "best understood . . . as a claim that the district court applied the wrong *legal* standard in assessing his guilt—specifically, by omitting the knowledge-of-status element now required under *Rehaif*." *Id.* (emphasis added). Because a district court's *legal* error during a bench trial regarding the elements of the offense is reviewed in the same manner as an erroneous jury instruction—plain error where the defendant failed to object—we held that Johnson's claim was reviewable for plain error and reaffirmed our prior conclusion. *Id.* at 636, 639.

Following oral argument in this case, the government filed a 28j letter alerting us to *Johnson*. We asked the government and Door to submit supplemental briefs addressing what impact, if any, *Johnson* has on the standard

of review applicable to Door's sufficiency of the evidence challenge. Having reviewed the parties' submissions, we conclude that *Johnson* compels the conclusion that Door's sufficiency claim is subject to plain-error review.

Door first argues that the government has forfeited any plain-error argument. Relying on *United States v. Murguia-Rodriguez*, 815 F.3d 566 (9th Cir. 2016), Door urges the panel that the government's briefing of sufficiency of the evidence operates as a forfeiture of plain-error review. But unlike *Murguia-Rodriguez*, this is not a situation in which the government failed to argue that, under controlling law, an error was not objected to and therefore forfeited. *Id.* at 573–74. Rather, both parties assumed that the general rule regarding preservation of sufficiency of the evidence claims via summary Rule 29 motions extended to arguments based on a change in the law after trial. Until *Rehaif* and *Johnson*, there was no precedent on this precise question and, indeed, at least two other circuits have reviewed *Rehaif* challenges to the sufficiency of the evidence de novo where a general Rule 29 motion was made in the district court. *See, e.g., United States v. Staggers*, 961 F.3d 745, 754 (5th Cir. 2020); *United States v. Maez*, 960 F.3d 949, 959 (7th Cir. 2020). We think the government gets the benefit of the same rule that allows Door to bring his *Rehaif* claims—"an appellate court must apply the law in effect at the time it renders its decision." *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969). Although the government might have argued differently in its original brief, we are not willing, in these circumstances, to deem such failure a forfeiture. *Cf. Murguia-Rodriguez*, 815 F.3d at 574–75 ("Our rule, of course, is discretionary, and there may well be good reason to apply plain error in a particular case . . . .").

Door next argues that we are not bound by *Johnson* because Door had a jury trial, not a bench trial. We are not persuaded that this distinction relieves us of our duty to follow *Johnson.* Johnson advanced the precise claim that Door asserts here: the government failed to prove at trial that he knew of his prohibited statuses, as now required by *Rehaif*. *Johnson*, 979 F.3d at 636. As in *Johnson*, Door does not claim that the government failed to introduce "evidence sufficient to satisfy each of the elements required for conviction *at the time of his trial*." *Id.* (emphasis added). We fail to see how the difference between a jury trial and a bench trial would require us to view these identical legal challenges differently. Stated otherwise, if Johnson's challenge could not be conceived of as a sufficiency challenge, then neither can Door's. We thus understand Door's sufficiency challenge as a claim of trial error. Because Door did not object to the trial court's omission of the knowledge-of-status element, we review for plain error under Rule 52(b).

Under plain-error review, we may reverse only where there is an (1) error that is (2) plain, (3) affects substantial rights, and (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (cleaned up) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). In light of *Rehaif*, it is clear that the district court erred in failing to require the government to prove Door's knowledge of his prohibited statuses and that error is now plain. As we did in *Johnson*, we will "assume without deciding that the district court's error affected [Door]'s substantial rights." 979 F.3d at 636. Thus, we will resolve this case under the fourth prong of plain-error review.

This prong "helps enforce one of Rule 52(b)'s core policies, which is to reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error." *Id.* (citation and internal quotation marks omitted). To satisfy the fourth prong, Door bears the burden of offering "a plausible basis for concluding that an error-free retrial might end more favorably." *Id.* at 637 (discussing *Johnson v. United States*, 520 U.S. 461, 470 (1997), wherein the Supreme Court concluded that the failure to submit the element of materiality to the jury did not warrant reversal under the fourth prong of plain-error review because the petitioner "presented no plausible argument that the false statement under oath for which she was convicted . . . was somehow not material to the grand jury investigation"). That is, Door must demonstrate that a "miscarriage of justice would otherwise result." *Id.* at 636–37 (citations omitted). No miscarriage of justice results where the "correction of an unpreserved error would ultimately have no effect on the judgment." *Id.* at 638. We conclude that Door has not made such a showing.

Beginning with Door's § 922(g) conviction, Door cannot show that our refusal to correct the district court's error would result in a miscarriage of justice. In reviewing for plain error, we may examine the entire record on appeal. *See Johnson*, 979 F.3d at 638; *Benamor*, 937 F.3d at 1189. When Door possessed the firearms (and body armor), he had multiple felony convictions for which he was sentenced to prison terms ranging from 14 months to 10 years. Having served more than a year in prison, Door cannot (and does not attempt to) argue that a jury would find that he was unaware of his status as a person previously convicted of an offense punishable by more than a year in prison.

Turning to Door's § 931(a)(1) conviction, we are likewise convinced that Door cannot plausibly argue that he was unaware of his status as a person previously convicted of a felony that is a crime violence. To begin, Door and the government entered into a stipulation that was read to the jury, in which Door conceded that he had been convicted of both predicate crimes in language identical to the statutes. The stipulation provided:

> Prior to November 9, 2011, Kenneth Door, the defendant herein, had been convicted of a felony crime punishable by a term of imprisonment exceeding one year. That is a crime of violence, as defined by law, and therefore was a convicted felon and a person convicted of a felony that is a crime of violence at the time of the events that are the subject of this prosecution.

Thus, at the very least, that stipulation admitted that Door knew of the *fact* of his convictions at trial.

The more difficult question is whether the stipulation also conceded that Door *knew* that at least one of his prior felonies was punishable for a term exceeding a year and that one was a crime of violence as defined in § 16 when he possessed the firearms and body armor in 2011. Although the stipulation did not explicitly state that Door knew of his prohibited statuses, the stipulation recited that Door had been convicted of a felony "punishable by a term of imprisonment exceeding one year" and further specified that the felony was "a crime of violence, as defined by law." It is the shortest of steps for a juror to conclude that, when Door possessed the firearms and body armor, he knew of the crimes for which he had

previously been convicted. Being convicted of a felony is generally a major life event; as the Second Circuit has aptly observed, "given the rights to appointed counsel, effective assistance of counsel, and due process, it is highly improbable that a person could be convicted of a felony without being aware that his possible sentence would exceed one year's imprisonment." *United States v. Miller*, 954 F.3d 551, 559 (2d Cir. 2020) (footnotes omitted); *see also Staggers*, 961 F.3d at 757 (reasoning that, "absent any evidence suggesting ignorance, a jury applying the beyond-a-reasonable-doubt standard could infer that a defendant knew that he or she was a convicted felon from the mere existence of a felony conviction" as evidenced by the defendant's stipulation); *United States v. Ward*, 957 F.3d 691, 695–96 (6th Cir. 2020) (holding that a rational juror could have inferred the defendant knew of his prohibited status based on his stipulation and his lawyer's emphasis on the stipulation, and observing that "[a]lthough the stipulation of a prior felony does not automatically establish knowledge of felony status, it is strongly suggestive of it" (citation and internal quotation marks omitted)).

The stipulation was, no doubt, a strategic concession by Door because it precluded the government from presenting evidence of Door's status as a violent felon and laying out his multiple prior convictions before the jury. *See Old Chief v. United States*, 519 U.S. 172, 190–92 (1997). Had Door refused to stipulate to his convictions, the government likely would have—subject, of course, to the limitations imposed by the Federal Rules of Evidence—introduced proof of his prior convictions to establish the status element. *See, e.g., United States v. Weiland*, 420 F.3d 1062, 1077–78 (9th Cir. 2005) (analyzing the admissibility of records of convictions in a § 922(g) prosecution under Federal Rule of Evidence 403 in

the absence of the defendant's stipulation to his criminal status).

Moreover, this case presents a starkly different situation than the hypothetical that the Court set out in *Rehaif*. In *Rehaif*, the majority posited that a convicted felon might lack knowledge that he was convicted of a crime punishable by imprisonment for a term exceeding one year if he was "convicted of a prior crime but sentenced only to probation." 139 S. Ct. at 2198. In the Court's hypothetical, the fact that a defendant charged with a felony received probation might have obscured the felon's understanding of the length of the sentence he had faced. By contrast, Door's stipulation admitted that he knew of his convictions and the defining features of those crimes. There is nothing tricky or hidden in the stipulation and therefore no ambiguity in what Door stipulated to. As such, we think the stipulation tends to weigh against reversal.

But we do not rest our decision on Door's stipulation alone. As discussed, our review is not limited to the record adduced at trial, and Door had multiple felony convictions when he possessed the body armor. One of those convictions was for felony harassment under Wash. Rev. Code. §§ 9A.46.020(1)(a)(i) and (2)(b)[8] for "threatening to kill" a person. We previously held in a published opinion in Door's prior appeal that a conviction under Wash. Rev. Code

---

[8] The sections of the Washington harassment statute that applied to Door's 1997 conviction provided (1) "[a] person is guilty of harassment if . . . [w]ithout lawful authority, the person knowingly threatens . . . [t]o cause bodily injury in the future to the person threatened or any other person"; and (2) a "person is guilty of a class C felony if . . . the person harasses another person . . . by threatening to kill the person threatened or any other person." Wash. Rev. Code. § 9A.46.020.

§ 9A.46.020(2)(b) qualifies as a crime of violence because a knowing threat to kill a person "necessarily entails the threatened use of violent physical force against another person." *Door*, 917 F.3d at 1152. Door tries to downplay the significance of this conviction by arguing that the record contains no plea colloquy establishing that he understood the nature of felony harassment. But it is Door's burden to show how the plain error has seriously affected the fairness, integrity or public reputation of his judicial proceedings. *See Johnson*, 520 U.S. at 470. Door has not carried that burden. Nowhere does he offer a plausible argument that he lacked the requisite knowledge of his status as a violent felon or that he would have proceeded differently at trial had the government been required to prove his knowledge of his prohibited statuses. Indeed, we are quite confident that Door would not have foregone the benefits of his stipulation if *Rehaif* had been decided prior to his trial. The stipulation shielded Door from having the government splay the details of his prior felonies before the jury; Door has given us no reason to think that it would be a prudent strategy to waive his rights under *Old Chief* and withdraw his stipulation. *See Staggers*, 961 F.3d at 756 (concluding that if *Rehaif* were in effect at the defendant's trial, he "would have stipulated to both the felon-status element and the knowledge-of-felon-status element to keep the jury ignorant of the inculpatory details otherwise required to prove knowledge of felon status"). In short, Door fails to persuade us that a correction of the *Rehaif* error would ultimately affect the outcome. *See, e.g., United States v. Cotton*, 535 U.S. 625, 633 (2002) ("Surely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base."). We therefore conclude that the district court's error did not seriously affect the fairness, integrity or public reputation of judicial proceedings.

C. *Indictment and Jury Instructions*

Door argues that his indictment and jury instructions were also flawed because neither stated that Door's knowledge of his prohibited statuses was an element of the crimes. Because Door did not raise these challenges in the district court, we review them for plain error. *See Olano*, 507 U.S. at 732.

1.   Indictment

With respect to the § 922(g) charge, Count One of the indictment alleged that Door, "having been convicted of a crime punishable by imprisonment for a term exceeding one year . . . did knowingly possess firearms." Count One also listed eleven different convictions with their docket numbers. Similarly, with respect to the § 931(a) charge, Count Two alleged that Door, "having been convicted of a felony crime of violence . . . did knowingly possess body armor" and listed six different convictions with their docket numbers.

The government claims that (1) Door has waived his challenge to the indictment; and (2) the indictment is not plainly insufficient because it tracked the statutory language of § 922(g)(1) and § 931(a)(1). Both arguments lack merit. First, a defendant may challenge an indictment after trial; our review is just limited to plain error. *See United States v. Leos-Maldonado*, 302 F.3d 1061, 1064 (9th Cir. 2002); *see also United States v. Qazi*, 975 F.3d 989, 992 (9th Cir. 2020). Second, although the indictment uses the word "knowingly" to describe the charged offenses, it only uses the word to modify "possess firearms" and "possess body armor," respectively. In light of *Rehaif*, because the indictment only charged Door with knowledge of possession, not knowledge of his status, the indictment clearly failed to allege an element

of each offense. This was plain error. *See Henderson v. United States*, 568 U.S. 266, 274 (2013) (explaining that an error can be "plain" under Federal Rule of Criminal Procedure 52(b) if it is plain at "the time of appellate consideration" (citation and internal quotation marks omitted)). But, for the reasons discussed, Door cannot show that this error affected the fairness, integrity or public reputation of the trial.

### 2. Jury Instructions

It is undisputed that "the absence of an instruction requiring the jury to find that Defendant knew he was a felon was clear error under *Rehaif*." *Benamor*, 937 F.3d at 1188. However, as discussed, Door cannot satisfy the final prong of the plain-error test.

## III. OBSTRUCTION OF JUSTICE

We next consider whether the district court erred in applying the obstruction of justice enhancement. We review the proper interpretation of the Guidelines de novo, the district court's factual findings made at sentencing for clear error, and the application of the Guidelines to the facts of a case for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017).

As a preliminary matter, our review is not, as the government contends, limited to plain error. At sentencing, Door objected to the obstruction of justice enhancement on the grounds that the record was insufficient to show he made any threats; Door now argues that the district court failed to make a finding as to his *purpose* in making the alleged threats. Door's basic claim, however, remains the same: the

district court's findings were insufficient to support the obstruction of justice enhancement. *See United States v. Guzman-Padilla*, 573 F.3d 865, 877 n.1 (9th Cir. 2009) (holding that claims, not arguments, are waived or forfeited).[9]

An enhancement for obstructing or impeding the administration of justice is warranted if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Door argues that his alleged threats to kill his federal case agent can only support an obstruction of justice enhancement if they were intended to prevent future testimony or cooperation, not for the purpose of retaliation.[10] Even assuming retaliatory motive alone is insufficient to warrant an enhancement under U.S.S.G. § 3C1.1, the district court did not commit clear error. Although Door communicated his threats after the agent testified at the suppression hearing, he still made the threats prior to the agent's testimony at trial. These pre-trial threats could reasonably be construed as an attempt to

---

[9] Nor has Door waived his right to appeal the application of this enhancement because he failed to raise it in his second appeal. We did not limit the scope of the remand when we remanded Door's case for a second re-sentencing. *See Door*, 917 F.3d at 1155; *Door*, 756 F. App'x at 758–59. The district court was thus "empowered to address all sentencing issues following remand." *United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994).

[10] *But see United States v. Rubio*, 317 F.3d 1240, 1244–45 (11th Cir. 2003) (holding retaliatory purpose sufficient because Application Note 4(i) to U.S.S.G. § 3C1.1 authorizes an enhancement based upon any conduct prohibited by the obstruction of justice provisions of Title 18, including 18 U.S.C. § 1513(b), which prohibits a person from inflicting bodily injury on a witness with the intent to retaliate).

obstruct justice on the theory that Door wanted to prevent the agent from testifying at his trial.

## IV.  SENTENCE

Finally, we consider Door's claim that his sentence was both procedurally and substantively unreasonable.  The court reviews the district court's sentencing decision for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).

"Procedural errors include, but are not limited to, incorrectly calculating the Guidelines range, treating the Guidelines as mandatory, failing to properly consider the § 3553(a) factors, using clearly erroneous facts when calculating the Guidelines range or determining the sentence, and failing to provide an adequate explanation for the sentence imposed."  *United States v. Armstead*, 552 F.3d 769, 776 (9th Cir. 2008).  Door argues that his sentence is procedurally unreasonable because the district court gave the Guidelines no weight and therefore failed to properly consider the § 3553(a) factors.  In support of this proposition, Door points to the district court's expressions of frustration with the categorical approach and statement that the "guidelines are a guide, unless they are not."

We disagree.  It is well settled that the district court "may not presume that the Guidelines range is reasonable . . . . Nor should the Guidelines factor be given more or less weight than any other."  *Carty*, 520 F.3d at 991.  Rather, the sentencing court is "free to conclude that the applicable Guidelines range gives too much or too little weight to one or more factors, either as applied in a particular case or as a matter of policy."  *United States v. Christensen*, 732 F.3d 1094, 1101 (9th Cir. 2013).    Contrary    to    Door's

characterization, the district court's remarks indicate that it looked to the Guidelines and determined that the range did not adequately account for the seriousness of Door's criminal history and his various threats to witnesses. This was an experienced judge, who was very familiar with Door's case. Moreover, the district court explained that its non-Guidelines sentence was based on "[r]espect for the law, deterrence, [and] protection for the community," which are among the additional sentencing factors specifically listed in § 3553(a). *See* 18 U.S.C. § 3553(a)(2)(A)–(C). The district court did not commit procedural error in concluding that the Guidelines did not adequately reflect the nature and circumstances of Door's offense and the danger he posed to the community.

Door's sentence is also substantively reasonable. In reviewing the reasonableness of a sentence, we consider the totality of the circumstances. *Carty*, 520 F.3d at 993. The reviewing court must give "due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance. " *Gall*, 552 U.S. at 51. Although a sentence outside the Guidelines does not carry a presumption of unreasonableness, "the greater the variance, the more persuasive the justification will likely be because other values reflected in § 3553(a) . . . may figure more heavily in the balance." *Carty*, 520 F.3d at 992. This does not, however, mean that the district court must "tick off each of the § 3553(a) factors to show it has considered them." *Id.*

It is undisputed that in imposing a 276-month sentence, the district court deviated significantly from the guideline range of 140–175 months. The district court explained that it had, "on two prior occasions, said that I consider Mr. Door to perhaps be the most dangerous defendant I have had in 18 or 19 years. . . . Mr. Door is, was, and will be in my mind

an extremely dangerous person. He did everything and then more to justify his sentence." The record fully supports the district court's determination that Door was an extremely dangerous person who had shown an unwillingness to change. There is no basis upon which to find Door's sentence substantively unreasonable.

## V.  CONCLUSION

Although, in light of *Rehaif*, the district court committed plain error by failing to require the government to prove Door's knowledge of his prohibited statuses and omitting the knowledge element from the indictment and jury instructions, Door cannot show that these errors affected the fairness, integrity, or public reputation of the judicial proceedings. With respect to Door's sentence, the district court did not clearly err in finding that the pre-trial threats Door made could reasonably be construed as an attempt to obstruct justice. Nor is there a basis upon which to find Door's sentence either procedurally or substantively unreasonable. We therefore affirm the convictions and sentence.

**AFFIRMED.**