**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF COLTON, a California
municipal corporation,
            *Plaintiff-Appellant,*

            v.

AMERICAN PROMOTIONAL EVENTS,
INC.-WEST; APOLLO
MANUFACTURING CO.; ASTRO
PYROTECHNICS, INC.; ATLAS
FIREWORKS COMPANY, INC.; BLACK
& DECKER, INC.; CALIFORNIA
FIREWORKS DISPLAY COMPANY;
COUNTY OF SAN BERNARDINO;
EMHART INDUSTRIES, INC.; GOODRICH
CORPORATION; KWIKSET LOCKS,
INC.; PYRO SPECTACULARS, INC.;
PYROTRONICS CORP.; RED DEVIL
FIREWORKS COMPANY; THOMAS O.
PETERS; THE 1966 THOMAS O.
PETERS AND KATHLEEN S. PETERS
REVOCABLE TRUST; TROJAN
FIREWORKS, CO.; UNITED FIREWORKS
MANUFACTURING COMPANY INC.;
WHITTAKER CORPORATION,
            *Defendants-Appellees.*

No. 06-56718

D.C. No.
CV-05-01479-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
January 11, 2010—Pasadena, California

11137

Filed August 2, 2010

Before: Alfred T. Goodwin, William C. Canby, Jr., and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Roderick E. Walston, Best Best & Krieger LLP, Walnut Creek, California, argued the cause and filed briefs for

plaintiff-appellant. With him on the briefs were Gene Tanaka, Cynthia Germano, and Danielle G. Sakai, Best Best & Krieger LLP, Walnut Creek, California.

James L. Meeder, Allen Matkins Leck Gamble Mallory & Natsis LLP, San Francisco, California, argued the cause and filed a brief for defendants-appellees American Promotional Events, Inc.-West, Astro Pyrotechnics, Inc., Black & Decker, Inc., County of San Bernardino, Emhart Industries, Inc., Kwikset Locks, Inc., Thomas O. Peters, The 1996 Thomas O. Peters and Kathleen S. Peters Revocable Trust, Trojan Fireworks, and Whittaker Corp. With him on the brief were Ruth E. Stringer, Maxine M. Morisaki, Robert L. Jocks, Office of the County Counsel, County of San Bernardino, San Bernardino, California; Timothy V.P. Gallagher, Martin N. Refkin, Thomas A. Bloomfield, and Thomas S. Sites, Gallagher & Gallagher, P.C., Los Angeles, California; John E. Van Vlear and Daniel S. Kippen, Voss Cook & Thel LLP, Newport Beach, California; Richard A. Dongell, Matthew Clark Bures, and Christopher T. Johnson, Dongell Lawrence Finney, Los Angeles, California; Robert D. Wyatt and Gary A. Slodoba, Allen Matkins Leck Gamble Mallory & Natsis LLP, San Francisco, California; Steven H. Goldberg, Daniel J. Coyle, and Amilia Glikman, Downey Brand LLP, Sacramento, California; Steven J. Renshaw, Renshaw & Associates, PLC, Torrance, California; Philip Hunsucker and Allison McAdam, Resolution Law Group, P.C., Lafayette, California; David C. Solinger and Erik Mroz, Resolution Law Group, P.C., Woodland Hills, California.

Jeffrey D. Dintzer, Gibson, Dunn & Crutcher LLP, Los Angeles, California, filed a brief on behalf of defendant-appellee Goodrich Corporation. With him on the brief were Denise G. Fellers, Gibson, Dunn & Crutcher LLP, Los Angeles, California, and Michael K. Murphy, Gibson, Dunn & Crutcher LLP, Washington, D.C.

Philip C. Hunsucker, Resolution Law Group, P.C., Lafayette, California, filed a brief on behalf of defendant-appellant Pyro

Spectaculars, Inc. With him on the brief were Brian L. Zagon and Allison E. McAdam, Resolution Law Group, P.C., Lafayette, California.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide, among other things, whether the City of Colton, California, can recover response costs under the Comprehensive Environmental Response, Compensation, and Liability Act allegedly incurred as a result of perchlorate contamination in its water supply.

### I

### A

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") "is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994). Under CERCLA section 107(a), 42 U.S.C. § 9607(a), a private party may "recover expenses associated with cleaning up contaminated sites." *United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007).

To establish a prima facie claim for recovery of response costs under section 107(a), a private-party plaintiff must demonstrate:

> (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "haz-

ardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a).

*Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870-71 (9th Cir. 2001) (en banc) ("*Carson Harbor I*") (internal quotation marks omitted). Only the third element—whether the response costs were necessary and consistent with the national contingency plan ("NCP")—is at issue in this appeal.

Response costs are considered necessary when "an actual and real threat to human health or the environment exist[s]." *Id.* at 871. Response costs are considered consistent with the NCP "if the action, when evaluated as a whole, is in substantial compliance" with it. 40 C.F.R. § 300.700(c)(3)(i). The NCP "specifies procedures for preparing and responding to contaminations and was promulgated by the Environmental Protection Agency (EPA) pursuant to CERCLA § 105." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 161 n.2 (2004); *see also* 40 C.F.R. Pt. 300 (codifying the NCP). "It is designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment." *Carson Harbor Village Ltd. v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) ("*Carson Harbor II*") (internal quotation marks omitted).

B

The City of Colton ("Colton") draws its water supply from the Rialto-Colton groundwater basin ("Basin") in San Bernardino County, California. In 1997, Colton began monitoring its municipal supply wells for perchlorate contamination. By

2002, Colton had detected perchlorate in three of its wells in concentrations ranging from about 4 to 10 micrograms per liter ("µg/L"). At the time, the California Department of Health Services ("CDHS"), which regulates water quality, had an "advisory action level" for perchlorate of 4 µg/L. CDHS informed Colton that because "the perchlorate action level is an advisory action level, and thus, not enforceable," the three impacted wells "may continue to be used to supply the system." Nevertheless, in a closed-session meeting between its City Council and City Attorney, Colton adopted a policy of prohibiting the use of water with perchlorate levels above 4 µg/L. Pursuant to this policy, Colton took the impacted wells out of service and instituted a wellhead treatment program to eliminate the perchlorate in 2003.

C

In 2005, Colton filed suit against numerous entities that had engaged in industrial activities in the Basin over the years, alleging that they caused the release of perchlorate into the groundwater. In its third amended complaint, filed in December 2005, Colton alleged that it had spent $4 million to investigate the contamination and to implement the wellhead treatment program. Colton asserted claims for cost recovery and contribution under CERCLA, 42 U.S.C. §§ 9607(a), 9613(f); a claim for declaratory relief as to liability for future costs under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and various claims under state law.

Numerous defendants filed a motion for summary judgment, arguing that Colton could not recover its wellhead treatment program costs under CERCLA.[1] In its opposition,

---

[1]The defendant entities which joined in the motion were the County of San Bernardino, the 1996 Thomas O. Peters and Kathleen S. Peters Revocable Trust, Thomas O. Peters, American Promotional Events, Inc.-West, Pyro Spectaculars, Inc., Astro Pyrotechnics, Inc., Emhart Industries, Inc., Kwikset Locks, Inc., Black & Decker, Inc., Whittaker Corp., and Trojan Fireworks Co.

Colton argued that the defendants were liable for not only its wellhead treatment program costs, but also costs associated with a future Basin-wide cleanup estimated to cost between $55 and $75 million. The district court granted summary judgment for the defendants on Colton's federal claims and declined to exercise supplemental jurisdiction over Colton's state law claims.[2] The district court held that Colton could not recover its costs associated with the wellhead treatment program because it failed to show that such costs were necessary and consistent with the NCP; furthermore, because Colton could not show that it was entitled to recover any of its past costs, its claim for declaratory relief as to its future costs necessarily failed. Colton timely appealed.[3]

## II

Colton first seeks reversal of the district court's summary judgment denying recovery of its past response costs. Colton challenges the district court's conclusion that the wellhead treatment program was unnecessary because there was no immediate threat to the public health or environment. *See* 42 U.S.C. § 9607(a)(4)(B). Colton concedes, however, that it failed to comply with the national contingency plan in its past response action. Because Colton's concession is a sufficient ground upon which to affirm the summary judgment with respect to past response costs, we decline to review the merits of the district court's conclusion that such costs were unnec-

[2]Although not all the defendants joined in the motion for summary judgment, the district court *sua sponte* granted summary judgment in favor of the non-moving defendants.

[3]The district court also dismissed all counterclaims and cross-claims. Both Goodrich and Pyro Spectaculars, Inc. cross-appealed from the district court's dismissal of these counterclaims and cross-claims. We address the cross-appeals in a memorandum disposition filed concurrently with this opinion.

essary. *See Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1438 (9th Cir. 1992).[4]

### III

Colton also contends that the district court erred in granting summary judgment denying its claim for declaratory relief as to its future response costs.

### A

Before addressing the merits of the claim, we turn to the parties' various jurisdictional arguments.

### 1

The parties dispute whether Colton's claim for declaratory relief is ripe. "The constitutional ripeness of a declaratory judgment action depends upon whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (internal quotation marks omitted).

**[1]** In *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d

---

[4]Colton contends that if the district court's holding on the necessity of the response action is allowed to stand, such holding could have a preclusive effect in subsequent litigation. We note, however, that in a future action, Colton could argue that our reliance on the NCP compliance holding alone vitiates any preclusive effect of the district court's necessity holding. *See, e.g.*, *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir. 1996) ("It is a well-established principle of federal law that if an appellate court considers only one of a lower court's alternative bases for its holding, affirming the judgment without reaching the alternative bases, only the basis that is actually considered can have any preclusive effect in subsequent litigation."); *see also* Restatement (Second) of Judgments § 27, cmt. o (1982).

887 (9th Cir. 1986), we held that a claim for declaratory relief as to CERCLA liability is ripe when the "essential fact establishing [the plaintiff's] right to declaratory relief—the alleged disposal of hazardous substances . . . —has already occurred." *Id.* at 893. Later, in *In re Dant & Russell, Inc.*, 951 F.2d 246 (9th Cir. 1991), we held that a claim for cost recovery and declaratory relief under CERCLA becomes ripe only after plaintiffs "spend some money responding to an environmental hazard." *Id.* at 249. Finally, in *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177 (9th Cir. 2000), we held that a claim for declaratory relief for contribution under CERCLA section 113 is ripe when "[t]he pollution has been carefully studied, the parties litigated a genuine controversy about millions of dollars they had already spent, and the facts bringing about their relative responsibility have already occurred." *Id.* at 1192.

**[2]** None of these cases imposed any requirement that a party incur *recoverable—i.e.*, necessary and NCP-compliant —response costs before its claim for declaratory relief is ripe. Indeed, our cases make clear that so long as there has been a release of hazardous substances, and the plaintiff spends some money responding to it, a claim for declaratory relief is ripe for review. *Accord Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 668 n.4 (9th Cir. 2004) (explaining in dicta that "[a]s soon as [the plaintiff] expended its first dollar, it could have sued [the defendant] for this dollar and sought a declaratory judgment of [defendant's] liability for future response costs").

**[3]** Here, the facts establishing Colton's right to declaratory relief have already occurred because there is no dispute that there is perchlorate contamination of the Basin. Moreover, there is no dispute that Colton has incurred costs in responding to the contamination, and that Colton will incur additional costs in the future. The only dispute is whether Colton is entitled to recover these costs, which goes to the merits, not justiciability. Because this controversy cannot be deemed "remote and hypothetical," *Wickland Oil*, 792 F.2d at

893, we conclude that Colton's claim for declaratory relief is ripe.

2

**[4]** We next turn to the argument that Colton has mooted this appeal by filing a substantially new action in the same district court.[5] "A case is moot on appeal if no live controversy remains at the time the court of appeals hears the case." *NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007). The test for mootness is "whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor." *Id.* (internal quotation marks omitted).

**[5]** The defendants argue that Colton has effectively redressed the injury it seeks to remedy with this appeal—namely, the district court's dismissal of its declaratory relief claim—by filing a new action seeking the same relief. Therefore, our reinstatement of such claim would be superfluous. However, "[t]here is a recognized defense to a claim of mootness in the appellate context when a party can demonstrate that a lower court's decision, if allowed to stand, may have collateral consequences adverse to its interests." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 88 (1st Cir. 2008). Here, Colton faces a potential statute of limitations bar with respect to its claims against certain defendants, an argument these defendants have pressed in the later-filed action. A reversal by this court could put Colton on better footing with regard to limitations defenses, which "is a collateral consequence of the type that suffices to defuse a claim of mootness." *Id.* at 89. We therefore conclude that this appeal is not moot.

---

[5]The second action filed by Colton, No. 06-01319, was eventually dismissed without prejudice. Colton then filed a third action, No. 09-01864, which is currently pending in the district court. It is this third action to which we refer.

3

Finally, we consider whether the district court's disposal of Colton's CERCLA past response cost-recovery claims deprived the court of subject matter jurisdiction over the declaratory relief claim.[6]

**[6]** "It is well settled that the Declaratory Judgment Act does not itself confer federal subject matter jurisdiction but merely provides an additional remedy in cases where jurisdiction is otherwise established." *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 280 (9th Cir. 1988) (internal quotation marks and citation omitted). "Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits." *Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999).

**[7]** Here, Colton's declaratory relief claim is predicated on CERCLA, a federal statute providing a private right of action. Colton's nonfrivolous assertion of a CERCLA declaratory relief claim is therefore sufficient to confer federal subject matter jurisdiction, regardless of the district court's conclusion that Colton's CERCLA past response cost-recovery claims lacked merit.

B

Turning to the merits, we note that the district court held that because it was granting summary judgment on the section 107 cost-recovery claims, "Defendants are entitled to summary judgment in their favor on Plaintiff's . . . claim for

---

[6]We reject the argument that Colton is judicially estopped from arguing that there is subject matter jurisdiction. It is well established that subject matter jurisdiction cannot be expanded or contracted "by prior action or consent of the parties." *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951).

[declaratory] relief as well." Colton argues that its failure to incur recoverable response costs in the past has no bearing on whether it will incur such costs in the future.[7] Therefore, Colton contends that it should still be allowed to seek declaratory relief as to liability for its future costs.

**[8]** Whether a CERCLA plaintiff's failure to establish liability for its past costs necessarily dooms its bid to obtain a declaratory judgment as to liability for its future costs appears to be an issue of first impression in this circuit. Our sister circuits have taken divergent approaches to this issue. Some have held or suggested that recoverable past costs are a sine qua non for declaratory relief under CERCLA. *See, e.g.*, *Trimble v. Asarco, Inc.*, 232 F.3d 946, 958 (8th Cir. 2000), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 92 (2d Cir. 2000) (per curiam); *United States v. Occidental Chem. Co.*, 200 F.3d 143, 153-54 (3d Cir. 1999). Others have held or suggested that declaratory relief may be available even in the absence of recoverable past costs. *See, e.g.*, *United States v. Davis*, 261 F.3d 1, 46 (1st Cir. 2001); *County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1513 (10th Cir. 1991) (per curiam).

1

**[9]** The text of the Declaratory Judgment Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

---

[7]Contrary to the defendants' assertion, Colton did not waive this argument by failing to raise it below. In opposition to summary judgment, Colton argued that "it was not required to complete all tasks required by the NCP prior to the filing of the complaint," and that "so long as [it] has incurred at least nominal response costs," it could "invoke the declaratory relief provision of CERCLA to recover its future costs," even if "it is still too early to know how Colton will comply with the NCP." This is the same argument it now makes on appeal.

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). CERCLA also contains a provision for declaratory relief. Section 113(g)(2) provides that in any initial cost-recovery action under section 107, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2).

**[10]** Although Colton's complaint referred to the Declaratory Judgment Act rather than CERCLA section 113(g)(2), the latter provision clearly governs this initial cost-recovery action. Because "a precisely drawn, detailed statute pre-empts more general remedies," *Hinck v. United States*, 550 U.S. 501, 506 (2007) (internal quotation marks omitted), we must consider whether Colton was entitled to declaratory relief under CERCLA's more detailed declaratory relief provision. *See A. Shapiro & Sons, Inc. v. Rutland Waste & Metal Co.*, 76 F. Supp. 2d 82, 88 (D. Mass. 1999) (declining "to permit an indirect approach to declaratory relief [under the Declaratory Judgment Act] when the direct CERCLA-based approach . . . is unavailable").

**[11]** The declaratory judgment mandated by section 113(g)(2) pertains to "liability for response costs." 42 U.S.C. § 9613(g)(2). Such "liability for response costs" must refer to the response costs sought in the initial cost-recovery action, given that the sentence later refers to "any *subsequent* action or actions to recover *further* response costs." *Id.* (emphases added). Therefore, if a plaintiff successfully establishes liability for the response costs sought in the initial cost-recovery action, it is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions.

**[12]** Here, Colton has failed to establish present liability because of its conceded failure to comply with the NCP but seeks a declaratory judgment on *future* liability. Section

113(g)(2), however, does not provide for such relief. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transam. Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-20 (1979). In section 113(g)(2), Congress specified a mechanism whereby a declaration of liability for costs already incurred has preclusive effect in future proceedings as to costs yet to be incurred. If Congress had intended for a declaration of future liability to be available, it could have provided that "the court shall enter a declaratory judgment on liability for *further* response costs." That it did not leads us to conclude that declaratory relief is available only if liability for past costs has been established under section 107.

2

Colton would have us bypass the initial liability determination to further "CERCLA's goal of encouraging private parties to clean up hazardous sites." According to Colton, denying declaratory relief "would discourage private parties from taking future actions to clean up hazardous sites if they failed to comply with the NCP in taking past cleanup actions." CERCLA's goal, however, is not simply to encourage private response, but rather to "make the party seeking response costs choose a cost-effective course of action to protect public health and the environment" and to achieve "a CERCLA-quality cleanup." *Carson Harbor II*, 433 F.3d at 1265 (internal quotation marks omitted). Providing declaratory relief based on mere assurances of future compliance with the NCP would create little incentive for parties to ensure that their initial cleanup efforts are on the right track. *See Dant & Russell*, 951 F.2d at 250 (noting that premature relief under CERCLA can create perverse incentives).

Moreover, awarding declaratory relief before a plaintiff has incurred any recoverable costs would undermine the very purpose of declaratory relief, which is to "economize[ ] on judi-

cial time." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 616 (7th Cir. 1998). A court would have to make complicated determinations as to which defendants are responsible for what proportion of the release, without any assurance that the plaintiff would ever "meet its burden of proving in an adversary proceeding that its expenses were necessary and incurred in a manner consistent with the national contingency plan." *Stanton Road Assocs. v. Lohrey Enters.*, 984 F.2d 1015, 1021 (9th Cir. 1993).

**[13]** We conclude that CERCLA's purposes would be better served by encouraging a plaintiff to come to court only after demonstrating its commitment to comply with the NCP and undertake a CERCLA-quality cleanup. Upon establishing liability under section 107, the plaintiff can "obtain reimbursement for [its] initial outlays, as well as a declaration that the responsible party will have continuing liability for the cost of finishing the job." *Dant & Russell*, 951 F.2d at 249-50. Such a declaration would allow the plaintiff to avoid costly and time-consuming relitigation of liability once it has already been established. *See Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994) ("Congress included language [in section 113(g)(2)] to insure that a responsible party's liability, once established, would not have to be relitigated . . . ."). Where, as here, the plaintiff fails to establish section 107 liability in its initial cost-recovery action, no declaratory relief is available as a matter of law.

## IV

**[14]** Colton also appeals from the dismissal of its pendent state law claims. Having disposed of Colton's federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3). "Because the district court did not err in granting summary judgment on the federal claims, it did not abuse its discretion in dismissing the state-law claims." *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1169 (9th Cir. 2002).

V

For the foregoing reasons, the district court's summary judgment is **AFFIRMED**.[8]

---

[8]We grant the outstanding motions for judicial notice.