**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

TYRONNE POLLARD, JR.,
*Defendant-Appellant.*

No. 20-15958

D.C. Nos.
4:20-cv-01136-JSW
4:17-cr-00613-JSW-1

ORDER AND
OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted April 16, 2021
San Francisco, California

Filed December 21, 2021

Before: Ryan D. Nelson and Danielle J. Forrest,[*] Circuit
Judges, and Janis Graham Jack,[**] District Judge.

---

[*] Formerly known as Danielle J. Hunsaker.

[**] The Honorable Janis Graham Jack, United States District Judge
for the Southern District of Texas, sitting by designation.

Order;
Opinion by Judge R. Nelson;
Concurrence by Judge R. Nelson;
Concurrence by Judge Forrest

## SUMMARY[***]

### 28 U.S.C. § 2255

The panel (1) withdrew an opinion filed August 27, 2021; (2) filed a replacement opinion affirming the prejudice portion of the district court's order denying a 28 U.S.C. § 2255 motion in which Tyrone Pollard, Jr. challenged his felon-in-possession guilty plea on the ground that he was not informed of 18 U.S.C. § 922(g)(1)'s knowledge-of-status element; and (3) otherwise denied a petition for rehearing and, on behalf of the court, a petition for rehearing an banc.

Pollard filed the motion after the Supreme Court in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), held that § 922(g)(1) requires the government to prove that the defendant knew he was a felon at the time of possession. The district court denied the motion because Pollard had not shown actual prejudice and thus failed to overcome the procedurally defaulted nature of his claim. The district court also determined that Pollard had shown cause to overcome the procedural default.

The panel noted that everything in the record shows Pollard was aware of his felon status, and that Pollard

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conceded there is little question that one can reasonably infer from his criminal history that he must have known he had served more than a year in prison for a felony offense. The panel rejected Pollard's argument that the question is not whether a jury would have convicted him, but whether he would have gone to trial despite the uncontroverted evidence of guilt—a purely subjective inquiry that does not track recent Supreme Court precedent. The panel explained that a court must determine whether the underlying record objectively shows that a specific defendant would have not pled guilty absent the allegedly prejudicial error. The panel concluded that Pollard failed to show actual prejudice because he did not point to any objective indications in his underlying criminal proceedings that he would have not pled guilty had he known of § 922(g)(1)'s knowledge-of-status element.

Concurring, Judge R. Nelson wrote separately to address the district court's position that Pollard could show cause. He wrote that at the time Pollard pled guilty, the claim Pollard would later raise on collateral review was reasonably available to him and was not a novel claim; and that even if it were futile, the futility of raising statutory claims under the circumstances of Pollard's case has been rejected as a showing of cause to overcome procedural default.

Concurring, Judge Forrest disagreed with Judge R. Nelson that current Supreme Court precedent dictates a broad futility-can-never-be-cause rule that bars collateral review in federal criminal cases.

**COUNSEL**

Geoffrey M. Jones (argued), Fairfax, California, for Defendant-Appellant.

Merry Jean Chan (argued) and Briggs Matheson, Assistant United States Attorneys; Matthew M. Yelovich, Chief, Appellate Section, Criminal Division; Stephanie M. Hinds, Acting United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

Geoffrey Hansen, Acting Federal Public Defender; Carmen Smarandoiu, Chief, Appellate Unit; Office of the Federal Public Defender, San Francisco, California; Cuauhtemoc Ortega, Federal Public Defender; Brianna Mircheff, Deputy Federal Public Defender, Los Angeles, California; for Amici Curiae Ninth Circuit Federal Public and Community Defender Offices.

---

**ORDER**

The Opinion filed August 27, 2021, and appearing at 10 F.4th 948 (9th Cir. 2021), is withdrawn and substituted. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit. The Clerk is directed to file the replacement opinion submitted with this order. The Petitions for Rehearing and Rehearing En Banc are otherwise **DENIED**. Subsequent petitions for rehearing or rehearing en banc may be filed.

**OPINION**

R. NELSON, Circuit Judge:

After *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Tyronne Pollard, Jr., collaterally challenged his felon-in-possession guilty plea because he was not informed of 18 U.S.C. § 922(g)(1)'s knowledge-of-status element. Because Pollard has not adequately shown actual prejudice, his claim remains procedurally defaulted. *See Greer v. United States*, 141 S. Ct. 2090, 2098 (2021). We therefore affirm the prejudice portion of the district court's order.

I

In December 2017, Pollard was indicted for possessing a gun as a felon. *See* 18 U.S.C. § 922(g)(1). As the crime implies, this was not Pollard's first offense. Over the last twenty years, he was convicted of several felonies and served over five years in prison. His federal felon-in-possession indictment was not his first gun-related offense either. In 2004, Pollard was sentenced to over a year in prison for violating California's felon-in-possession statute. So when officers found guns in Pollard's possession in 2017, the federal government's allegations were straightforward: Pollard was a felon who knowingly possessed a gun and ammunition that were transported in interstate commerce. Pollard pled guilty. He was sentenced to 57 months and did not appeal.

A year later, the Supreme Court decided *Rehaif*, holding that § 922(g)(1) requires the government to prove that the defendant knew he was a felon at the time of possession. *See generally* 139 S. Ct. 2191. Pollard then filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255(a), contending that his guilty plea was not intelligent,

knowing, or voluntary without having been informed of § 922(g)(1)'s knowledge-of-status element. The district court denied Pollard's motion because he had not shown actual prejudice and thus failed to overcome the procedurally defaulted nature of his claim.[1] This appeal followed.

## II

We have jurisdiction under 28 U.S.C. § 2253(a) and review the denial of Pollard's § 2255 motion de novo. *United States v. Hardiman*, 982 F.3d 1234, 1236 n.1 (9th Cir. 2020) (per curiam) (citation omitted).

## III

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted). And like any petitioner who tries to collaterally attack a guilty plea, Pollard must overcome "significant procedural hurdles" before a court can reach the merits of his challenge. *Id.* Specifically, Pollard's motion is procedurally defaulted since he did not appeal his conviction in 2018. *Id.* Thus, Pollard must show (1) cause for why he did not object to or directly appeal the alleged error and

---

[1] The district court also determined that Pollard had shown cause to overcome the procedural default. Because we do not depend on that finding and leave that question for another day, that determination has no preclusive effect in future cases. *Cf. City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1004 n.4 (9th Cir. 2010) ("It is a well-established principle of federal law that if an appellate court considers only one of a lower court's alternative bases for its holding, affirming the judgment without reaching the alternative bases, only the basis that is actually considered can have any preclusive effect in subsequent litigation." (citing *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir.1996)).

(2) actual prejudice resulting from the error to overcome that default. *Id.* at 622; *Murray v. Carrier*, 477 U.S. 478, 485 (1986).[2] This showing is "a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "In applying this dual standard to the case before us, we find it unnecessary to determine whether [Pollard] has shown cause, because we are confident he suffered no actual prejudice of a degree sufficient to justify collateral relief." *Id.* at 168.[3]

A petitioner who pled guilty is prejudiced if there is "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). A court cannot consider whether a defendant's decision to go to trial "may have been foolish." *United States v. Monzon*, 429 F.3d 1268, 1272 (9th Cir. 2005) (citation omitted). But a court can consider whether evidence "proved beyond a reasonable doubt that Defendant had the knowledge required by *Rehaif* and that any error"

---

[2] Alternatively, a petitioner can show actual innocence to overcome procedural default. *Bousley*, 523 U.S. at 622–23. Pollard does not argue that here.

[3] Pollard argues a *Rehaif* error is structural. In *Greer*, the Supreme Court rejected that contention. 141 S. Ct. at 2099–2100. Structural errors are a "highly exceptional category." *Id.* at 2100 (citation and internal quotation marks omitted). And "discrete defects in the criminal process—such as . . . the omission of a required warning from a Rule 11 plea colloquy—are not structural because they do not '*necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" *Id.* Thus, *Rehaif* errors are never structural, and a habeas petitioner is still required to show actual prejudice. At any rate, a habeas petitioner must show actual prejudice to overcome procedural default, even if an error is structural, when the error does not always result in actual prejudice. *See generally Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017).

was not prejudicial. *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019).

This evidence can be either direct or circumstantial. *Rehaif*, 139 S. Ct. at 2198 (citing *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)). And "[i]n a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb" for a simple reason: "If a person is a felon, he ordinarily knows he is a felon." *Greer*, 141 S. Ct. at 2097. Thus, we often consider a defendant's criminal history to determine whether a *Rehaif* error was prejudicial. *E.g.*, *Benamor*, 937 F.3d at 1189 (finding "no probability" that Benamor did not know of his status after serving multiple years in prison for seven felonies, including a state felon-in-possession conviction); *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 989 (9th Cir. 2020) (finding "no reasonable probability" of a different outcome when the defendant was in prison for over a decade with six prior felony convictions); *United States v. Johnson*, 979 F.3d 632, 638–39 (9th Cir. 2020) (three felony convictions and over five years in prison made it "overwhelming and uncontroverted" that Johnson knew of his felon status). Thus, demonstrating prejudice under *Rehaif* will be difficult for most convicted felons. *See United States v. Door*, 996 F.3d 606, 619 (9th Cir. 2021) ("[A]bsent any evidence suggesting ignorance," the jury can "'infer that a defendant knew that he or she was a convicted felon from the mere existence of a felony conviction' as evidenced by the defendant's stipulation." (citation omitted)).

Given Pollard's criminal history and the record below, there is no probability that he was unaware of his felon status. Before his current conviction, Pollard had served over five years in prison for committing numerous felonies.

And like in *Benamor*, Pollard had also been convicted under a state felon-in-possession statute.  *See* 937 F.3d at 1189. Pollard's plea colloquy also shows he knew he was a felon. When the district court asked him why he was being convicted, Pollard responded, "I possessed a firearm that I wasn't supposed to have."  And after the court asked why Pollard was not supposed to have a gun, Pollard replied, "Because I am a felon and my rights have been—didn't have the right to have it no more."  In short, everything in the record shows Pollard was aware of his felon status. Unsurprisingly, Pollard concedes there is little question that one can reasonably infer from his criminal history that he must have known he had served more than a year in prison for a felony offense.

Still, Pollard argues that the question is not whether a jury would have convicted him (the inquiry in cases like *Benamor*), but whether he personally would have gone to trial despite the uncontroverted evidence of guilt.  In essence, Pollard asks us to ignore the writing on the wall and accept his bare assertion on collateral review that he would not have pled guilty.  We reject this purely subjective (and potentially post hoc) inquiry as it does not track recent Supreme Court precedent.

In *Lee v. United States*, Lee, a South Korean national living in the United States, was repeatedly assured by his attorney that he would not be deported if he pled guilty. 137 S. Ct. 1958, 1963 (2017).  This advice was wrong, Lee pled guilty, and he was ordered deported.  *Id.* at 1962–63. He filed a § 2255 motion, asking to vacate his guilty plea as he would not have pled guilty but for his attorney's error.  *Id.* The Supreme Court agreed, but not because of Lee's arguments during the habeas proceedings.  *Id.* at 1969. Instead, the Court looked to the underlying record.  *Id.* at

1968–69.  It was clear that "avoiding deportation was *the* determinative factor" and that Lee "would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial."  *Id.* at 1967.  Lee repeatedly made this clear throughout his proceedings, stating during his plea colloquy that the possibility of deportation would affect his decision to plead. *Id.* at 1968–69.  These indications in the record were enough for Lee to show actual prejudice—i.e., that he would have gone to trial absent the error.  *Id.* at 1969.

The analysis in *Lee* reflects a broader principle applicable here.  The underlying record must demonstrate a reasonable probability that a defendant would not have pled guilty; assertions raised on habeas review alone are insufficient.  True, this is not a purely objective test.  Absent the error, a defendant may have decided to throw a "Hail Mary," *id.* at 1967, even if doing so would "have been foolish" to the reasonable defendant, *Monzon*, 429 F.3d at 1272.  But neither is it a purely subjective test.  Instead, a court must determine whether the underlying record objectively shows that a specific defendant would have not pled guilty absent the allegedly prejudicial error.  *See Lee*, 137 S. Ct. at 1967–69.  Pollard has not pointed to any objective indications in his underlying criminal proceedings and has therefore failed to show actual prejudice—especially in the face of strong evidence to the contrary.[4]

---

[4] Pollard argues had he known about the knowledge-of-status defense, he would have been "emboldened" to pursue a "quixotic" necessity defense.  But a necessity defense is not inherently tied to § 922(g)(1)'s knowledge-of-status element.  Instead, this defense is more closely tied to the possession element, an element Pollard was aware of when he decided to plead guilty.  Pollard's conclusory assertions do not

IV

Pollard fails to show actual prejudice from any error as nothing in the record objectively demonstrates that he would have not pled guilty had he known of § 922(g)(1)'s knowledge-of-status element.

**AFFIRMED.**

---

R. NELSON, Circuit Judge, concurring:

We correctly conclude that Pollard cannot show prejudice and that is enough to resolve this case. I write separately to address the district court's position that Pollard could show cause. At the time Pollard pled guilty, the claim he would later raise on collateral review was reasonably available to him. It was not a novel claim. And even if it were futile, the futility of raising statutory claims under the circumstances of Pollard's case has been rejected as a showing of cause to overcome procedural default. Therefore, Pollard could show neither cause nor prejudice.

I

As stated in the majority opinion, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted); Maj. Op. 6. To collaterally attack his guilty plea and overcome

---

explain how being informed of the knowledge-of-status element would have emboldened him to raise a defense available to him pre-*Rehaif.*

procedural default, Pollard must show, as relevant here, cause and prejudice.

The "cause and prejudice" standard is "grounded in concerns of comity and federalism." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). It requires a petitioner to show both (1) cause for why he did not object to or directly appeal the alleged error and (2) actual prejudice resulting from the error to overcome that default. *Bousley*, 523 U.S. at 622. While the majority concludes that Pollard cannot show prejudice, neither can Pollard show cause.

"Underlying the concept of cause" is that "absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel." *Reed v. Ross*, 468 U.S. 1, 13 (1984). So, assuming defense counsel was not constitutionally ineffective, counsel's inadvertent or intentional decision to not pursue a claim at trial or on appeal is insufficient to show cause on collateral review. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Instead, to establish cause for procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to bring the issue up on direct appeal. *Id*.

One external factor is when the claim was unavailable to a petitioner at the time of his direct appeal, such as when his constitutional claim is "so novel that its legal basis is not reasonably available to counsel." *Reed*, 468 U.S. at 16. "Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Thus, if a petitioner had the tools to construct a legal argument during his underlying proceedings, that argument

is not novel enough to constitute cause for failing to raise it earlier.  *See Anderson v. Kelley*, 938 F.3d 949, 962 (8th Cir. 2019).  For this reason, Pollard's claim is not novel given that "the Federal Reporters were replete with cases involving" the same claim.  *Bousley*, 523 U.S. at 622; *see Rehaif v. United States*, 139 S. Ct. 2191, 2199 (2019).

Though both are in the same family of reasons a claim was unavailable to a petitioner, novelty and futility are not the same.  Novelty is about new claims while futility concerns newly available claims.  As the Eleventh Circuit has aptly noted, "[i]n procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (citing *Smith v. Murray*, 477 U.S. 527, 534 (1986)).  Defense counsel may choose not to pursue a claim that has been rejected, but that is not to say the claim does not exist: a defendant's "*opportunity* to object" is not the same as his "likelihood of *prevailing* on the objection." *Greer v. United States*, 141 S. Ct. 2090, 2099 (2021).

## II

Here, the district court wrongly held that Pollard had shown cause because his *Rehaif* claim had been uniformly rejected and thus was not reasonably available to him on direct appeal of his guilty plea.  Though the lack of prejudice to Pollard procedurally bars his 28 U.S.C. § 2255 motion, I write separately to explain why the district court's holding was wrong.

The Supreme Court first addressed and rejected futility as grounds for cause in the 1940s.  *Sunal v. Large*, 332 U.S. 174, 183 (1947); *see also* Brent E. Newton, *An Argument for*

*Reviving the Actual Futility Exception to the Supreme Court's Procedural Default Doctrine*, 4 J. App. Prac. & Process 521, 527–44 (2002) (outlining history of futility as cause to excuse procedural default). Ultimately in *Isaac*, the Court held that "the futility of presenting an objection to the state courts cannot alone constitute cause for failure to object at trial," because "[e]ven a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid." 456 U.S. at 130. "If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts because he thinks they will be unsympathetic to the claim." *Id.*

*Bousley* applied *Isaac* to federal defendants challenging a change in statutory law. Unlike here, the *Rehaif*-like case in *Bousley* was first decided by the Eighth Circuit in a divided opinion, then reheard en banc with multiple dissents, was the subject of a circuit split, and ultimately decided by the Supreme Court. But still, *Bousley* ruled that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (quoting *Isaac*, 456 U.S. at 130 n.35).

In this court, after briefly accepting futility as cause, *see, e.g.*, *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981), we cited *Isaac* to call the futility doctrine "short-lived," *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993). Thereafter, when we upheld a showing a cause for futility, the Supreme Court showed its disapproval. Under circumstances similar to Pollard's case, we held that a claim was futile where a contrary statutory scheme had been upheld a few years before, "no reported case anywhere had held" favorably, and "there was no reason to believe that any court, anywhere,

would be sympathetic to the claim." *LaGrand v. Stewart*, 173 F.3d 1144, 1147–48 (9th Cir. 1999). However, the Supreme Court reversed the grant of the stay of execution. *Stewart v. LaGrand*, 535 U.S. 1173 (1999). And, in a related case, the Supreme Court held that a similarly situated petitioner had failed to show cause because controversy surrounding the same claim had existed for decades, several states were considering changing their relevant laws, and two Supreme Court justices had expressed their views that the claim was viable. *Stewart v. LaGrand*, 526 U.S. 115, 119–20 (1999).

Other courts have recognized the futility of relying on the futility doctrine. *See, e.g.*, *Minter v. Beck*, 230 F.3d 663, 665–66 (4th Cir. 2000) (holding that negative constitutional case law rendering the raising of a claim futile did not constitute state-created "impediment"); *United States v. Sanders*, 247 F.3d 139, 145–46 (4th Cir. 2001) (allowing futility to act as cause for constitutional law change "would invite defendants to bypass the preferred procedural avenue of trial and direct appeal in favor of collateral review," which would become "an all-purposive receptable for claims which in hindsight appear more promising than they did at the time of trial"); *Gatewood v. United States*, 979 F.3d 391, 396 & n.2 (6th Cir. 2020) (even "the alignment of the circuits against a particular legal argument does not equate to cause for procedurally defaulting it" (citation omitted)); *United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001) ("even when the law is against a contention, a litigant must make the argument to preserve it for later consideration"); *McCoy v. United States*, 266 F.3d 1245, 1259 (11th Cir. 2001) ("Supreme Court could not have been clearer that perceived

futility does not constitute cause to excuse a procedural default").[1]

When other circuits have disagreed, the claims at issue generally addressed changes in constitutional law where the Supreme Court reversed itself. *See, e.g.*, *Lassend v. United States*, 898 F.3d 115, 122–23 (1st Cir. 2018) (distinguishing *Bousley* for constitutional change in the law where Supreme Court overruled itself); *Cross v. United States*, 892 F.3d 288, 295 (7th Cir. 2018) (reversing course for Seventh Circuit on constitutional, not statutory, law change where Supreme Court overruled itself); *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017) (finding constitutional change in the law unavailable where Supreme Court overruled itself). Pollard's claims here involve statutory law, not constitutional law, and in *Rehaif* the Supreme Court reversed the lower courts, not its own precedent.

The Supreme Court in *Reed* suggested in dicta two situations when "the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement": (1) where the Supreme Court explicitly overrules itself; and (2) where the Supreme Court overturns a longstanding and widespread practice expressly approved by a near-unanimous body of lower courts, but which the Supreme Court had not addressed. *Reed*, 486 U.S. at 17. Pollard asserts, and the district court agreed, that the second situation applies since

---

[1] The Second Circuit held that cause can be established by futility due to "an unlikely development in [state statutory] law." *Gutierrez v. Smith*, 702 F.3d 103, 111–12 (2d Cir. 2012). But *Gutierrez* relied on precedent that either said futility may act as cause for constitutional law changes, *see DiSimone v. Phillips*, 461 F.3d 181, 191 (2006), or found cause due to a factual, not legal, basis being unavailable to counsel, *see Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999).

the Supreme Court reversed every circuit that had addressed the issue in *Rehaif*. *See Tate v. United States*, 982 F.3d 1226, 1228 (9th Cir. 2020) ("*Rehaif* interpreted a statute and did not invoke any constitutional provision or principle").

But the "vitality" of the dicta in *Reed* "has been questioned following the Supreme Court's decisions in *Teague* [*v. Lane*, 489 U.S. 288 (1989)] and *Bousley*." *United States v. Moss*, 252 F.3d 993, 1002–03 (8th Cir. 2001) (collecting cases). Regardless, we are not bound by Supreme Court dicta "should more complete argument demonstrate that the dicta is not correct." *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 548 (2013). *Bousley* was decided after *Reed*, and *Bousley*'s futility rule was dispositive rather than dicta. *Bousley* made no exception for claims that received consistent negative treatment in the courts. *See* 523 U.S. at 623. And while the first situation from *Reed* continues to make sense, *see Cvijetinovic v. Eberlin*, 617 F.3d 833, 839 n.7 (6th Cir. 2010), the second *Reed* hypothetical is difficult to apply in practice. That an argument is unacceptable to a particular Court of Appeals, at that particular time, does not excuse a defendant from raising the claim. This reasoning holds true even if all the Courts of Appeals have taken the same position. Since *Reed* was decided almost four decades ago, the Supreme Court has never relied on the second hypothetical to excuse default. *Moss*, 252 F.3d at 1003. We likewise have never found it dispositive.

Moreover, *Reed* confined its attention specifically to the situation presented there: "one in which th[e] Court has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application." 486 U.S. at 17. When the Supreme Court addresses a change in a constitutional rule, such an argument

is less available to petitioners before the change than a more typical argument of statutory interpretation. *Bousley*, in contrast, dealt with a change in statutory law, declined to recognize futility as cause, and did not expressly limit its holding. 523 U.S. at 617. Though *Bousley* referenced *Reed* without mentioning that *Reed* applied to constitutional principles, *Bousley* only cited *Reed* to distinguish it. *Id.* at 622. *Bousley* did not extend *Reed* to statutory principles. Here, like *Bousley*, *Rehaif* was a matter of statutory interpretation, *see Tate*, 982 F.3d at 1228, so *Reed*'s examples of unavailable claims do not apply.

Put simply, procedural default is still a high bar, overcome by futility only in "exceptional circumstances," *Reed*, 468 U.S. at 13, such as when a claim has been decisively foreclosed by Supreme Court precedent at the time of default, *see Cvijetinovic*, 617 F.3d at 839 n.7. Though there may be rare exceptions, *Bousley*'s holding is broad, without reference to *how* futile a claim may be. 523 U.S. at 622; *see also Simpson v. Matesanz*, 175 F.3d 200, 211–15 (1st Cir. 1999) (though *Reed* is still good law, it is "subject to *Bousley*'s caveat"); *Daniels v. United States*, 254 F.3d 1180, 1191, 1194 (10th Cir. 2001) (en banc) (analyzing constitutional claim and recognizing that *Bousley* had narrowed *Reed*); *McCoy*, 266 F.3d at 1259.

Applying these principles, Pollard has not shown cause. Unlike an argument based on a new constitutional principle, the tools to construct Pollard's § 922(g)(1)'s knowledge-of-status argument were reasonably available to him. The argument was being made all over the country. Before *Rehaif*, defendants had repeatedly raised the argument in all but two of the circuits since § 922(g)(1)'s most recent amendment. *See* 139 S. Ct. at 2195; *id.* at 2210 n.6 (Alito, J., dissenting) (collecting cases); *see also, e.g.*, *United States*

*v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997) (rejecting a knowledge-of-status element). Thus, "[u]nless and until the Supreme Court overrules its decisions that futility cannot be cause," *McCoy*, 266 F.3d at 1259, Pollard was required to preserve his claim on direct appeal to bring it on collateral review, *see Bousley*, 523 U.S. at 623.

Finally, Pollard and Federal Public and Community Defenders amici raise concerns that this reasoning would require defense counsel to argue even the "kitchen sink" and risk being sanctioned for bringing frivolous claims. *See United States v. Smith*, 250 F.3d 1073, 1077 (7th Cir. 2001) (Wood, J., dissenting from denial of rehearing en banc). This policy argument is unpersuasive—this has been the law nationwide for a long time with little evidence that defense counsel have been placed in untenable situations. Competent defense counsel regularly preserve arguments for future appeal. Defense counsel are trusted with the great responsibility of using their discretion to bring the best arguments reasonably available.

\*　　\*　　\*

The majority opinion limits its analysis to the strong lack-of-prejudice argument. But it did not need to do so. Pollard's knowledge-of-status argument was reasonably available to him when he elected to forego an appeal of his guilty plea, and thus he also cannot show cause.

FORREST, Circuit Judge, concurring:

I respectfully disagree with Judge Nelson that current Supreme Court precedent dictates a broad futility-can-never-be-cause rule that bars collateral review in federal criminal

cases. Of course, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)). But that is materially different from where a claim has been uniformly rejected by *every* circuit to consider it for a sustained period of time, as the Supreme Court posited in *Reed v. Ross*, 468 U.S. 1, 17 (1984) (recognizing cause for procedural default exists where a claim challenges "a longstanding and widespread practice to which th[e Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved.").

In my view, this point in *Reed* is still good law and the suggestion that it should be disregarded as dicta is unpersuasive. *See Boardman v. Inslee*, 978 F.3d 1092, 1106–07 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 387 (2021). Judge Nelson relies primarily on *Bousley* in asserting that futility can never be cause. But there, the circuit courts had not been unified for an extended period in rejecting the issue that was raised on collateral review. *Bousley*, 523 U.S. at 616; *Bailey v. United States*, 516 U.S. 137, 142 (1995). Thus, the general futility rule from *Isaac* applied, and the Supreme Court did not need to discuss the above-referenced point from *Reed*. At the very least, *Bousley* did not indicate that it was rejecting its prior acknowledgment in *Reed* that there are limited circumstances where futility could be cause under the procedural default analysis. Thus, even if that point was dicta, *Bousley* is not the type of "more complete argument" that suggests we should ignore *Reed*'s reasoned analysis. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 548 (2013).

Because the case at hand falls within the limited circumstance acknowledged in *Reed*, *see Rehaif v. United States*, 139 S. Ct. 2191, 2201 (2019) (Alito, J. dissenting) (the interpretation of 18 U.S.C. § 922(g) had been "adopted by every single Court of Appeals to address the question" and "used in thousands of cases for more than 30 years"), I agree that this case should be affirmed only on the prejudice prong of the procedural default analysis.